CASE *against* MARKS.

In an action of slander, the defendant cannot prove his own poverty in mitigation of damages.

Where the defendant, in an action for charging the plaintiff, an unmarried woman, with fornication, offered a witness, to prove, in mitigation of damages, that before the speaking of the words complained of, it had become a matter of common and general report, that the plaintiff had committed fornication; it was held, that such testimony was admissible.

But where the plaintiff, in such case, after objecting to the testimony offered by the defendant, and after it was excluded by the court, withdrew her objection, and the defendant, notwithstanding, neglected to examine the witness on that point, and the plaintiff had a verdict ; it was held, that the error of the court in excluding the testimony, was, under these circumstances, no ground for a new trial.

The rule of law, that in slander, the plaintiff may prove the wealth of the defendant, to aggravate damages, commented on.

THIS was an action of slander, for charging the plaintiff, a *feme sole*, with sexual intercourse with *Denison Crane* and *George Merriam.* The defendant pleaded *Not guilty*, with notice that he should give in evidence the truth of the charge. The cause was tried at *Hartford, January* term, 1850.

On the trial, the plaintiff introduced evidence tending to prove the speaking of the words alleged in the declaration, and also to prove the general good character of the plaintiff

for chastity.　The defendant then offered a witness to prove,
that the defendant, at the time of speaking the words, was, and ever since has been, a man of small property ; to the ad-
mission of which evidence, the plaintiff objected ; and the court sustained the objection, and ruled out the testimony.

In the progress of the trial, the defendant offered a witness to prove, that before the speaking of the words by him, it had become a matter of common and general report, that the plainti.f had committed fornication with said *Crane* and *Merriam* respectively, for the purpose of mitigating damages. To the admission of this testimony the plaintiff objected. The court sustained the objection, and refused to admit the testimony so offered ; but the court said, the defendant might introduce evidence to prove the bad character of the plaintiff for chastity, before the words were spoken.　The defendant proceeded with the rest of his proof : not, however, attacking the plaintiff's character, and in the forenoon of the next day, finished his evidence ; when the plaintiff's counsel informed the court, that they withdrew the objection, previously made by them, to proof by the defendant of common report.　But the defendant's counsel said, that they, after the ruling of the court, the day before, dismissed their witnesses to this point, and they had left town ; and they objected to the withdrawal of the objection at that time.　The court made no further determination, and the trial proceeded.

The plaintiff obtained a verdict for 1572 dollars, 72 cents, damages ; and the defendant moved for a new trial.

*Hungerford*, in support of the motion, contended, 1. That the testimony in regard to the property of the defendant, ought to have been admitted.　*Bennet* v. *Hyde*, 6 *Conn. R.* 24.

2. That the testimony as to the common report, ought to have been received.　2 *Greenl. Ev.* 282. § 275. (3d ed.) Earl of *Leicester* v. *Wells*, 2 *Campb.* 251.　*Commons* v. *Walters*, 1 *Porter*, 323.　*Calloway* v. *Middleton*, 2 *A. K. Marsh.* 372.　*Henson* v. *Veach*, 1 *Blackf.* 369.　*Young* v. *Slemons*, *Wright*, 124.　*Nelson* v. *Evans*, 1 *Dev.* 9.

*Toucey* and *Chapman*, contra, contended, 1. That the defendant cannot be permitted to prove his want of pecun-

*Hartford,*
*August, 1850.*

Case
*v.*
Marks.

iary means, to diminish damages. That a man may slander his neighbour with comparative impunity, is not one of the privileges of poverty which the law will sanction. The plaintiff may perhaps prove that the defendant is a *rich* man, to *aggravate* damages; to show the greater extent of the injury to the plaintiff, in consequence of the defendant's wealth and influence; and this is as far as any case has gone. *Bennet* v. *Hyde,* 6 *Conn. R.* 24. 2 *Greenl. Ev.* 276. § 269. (3d ed.)

2. That the defendant could not prove, that it was reported, before the speaking of the words, that the plaintiff had been guilty of the crime imputed to her; but the defendant must resort to proof of general *bad character.* *Wolcott* v. *Hall,* 6 *Mass. R.* 514. 518. *Bodwell* v. *Swan* & ux. 3 *Pick.* 376. 2 *Greenl. Ev.* 281, 2. § 274. (3d ed.) *Treat* v. *Browning* & ux. 4 *Conn. R.* 408. *Matson* v. *Buck,* 5 *Cowen,* 499. *Root* v. *King* & al. 7 *Cowen,* 613. 629. *Mapes v. Weeks,* 4 *Wend.* 659. *Fisher* v. *Patterson,* 14 *Ohio R.* 418. *Young* v. *Bennett,* 4 *Scam.* 43.

CHURCH, Ch. J. No justification of the words spoken was proved, on the trial; but the defendant, in mitigation of damages, offered to prove, that at the time of the speaking of the words, he was a man of very small property, and was worth but little. In the case of *Bennett* v. *Hyde,* 6 *Conn. R.* 24. this court held, that the plaintiff might prove the amount of the defendant's property, to aggravate damages, in an action of slander; and this solely on the ground of a supposed weight and influence which wealth might give to the slanderous words. We do not intend to overrule that decision, although we could better reconcile it to our views of correct principle, if we could see that wealth alone, especially, in this state of society, gives, of course, to its possessor, rank and influence. If it does, in some instances, this is not so commonly true, we think, as that a new and important legal principle should grow out of it. However this may be, in the present case, it is the defendant who offers to prove his own pecuniary condition, to shield himself from the consequences of his own wrong. For this we have no precedent; and we think this evidence was properly rejected.

The defendant, also, for the same purpose of mitigating

damages, offered to prove, that it had become a matter of *common* and *general report*, that the facts charged by the slanderous words, were true, before they were ever spoken by him.

We shall not attempt to reconcile all that has been decided by courts, or said by judges, upon this branch of the law of slander. Decisions have been variant and vacillating, and consequently, there has not been an entire uniformity of practice, on this subject, at the circuits in this state ; but we believe the more common practice has been, to admit such evidence.

In the case of *Bailey* v. *Hyde*, 3 *Conn. R.* 463. this court said, "Or if the fame of a person is disparaged, by there having been reports in the neighbourhood, that he had been guilty of practices similar to those imputed to him, it is admissible." So also in the case of *Treat* v. *Browning*, 4 *Conn. R.* 408. evidence had been admitted, on the trial, of general reports that the plaintiff had committed the alleged crime, as proof of character, and in mitigation of damages. And this was approved by this court ; and the *English* cases recognizing the same principle, were cited in the case with approbation. These cases certainly justify what we believe to have been the general understanding of the legal profession in this state, on this subject.

If there has been doubt as to this principle, there are principles lying on each side of it, which seem at length to be settled, and now well understood.

To prove that another person told to the defendant the same story, is not admissible. 1 *Sw. Dig.* 487. 2 *Stark. Sland.* 98. But it is competent for the defendant, in mitigation of damages, to prove the general character and reputation of the plaintiff to be bad. 1 *Greenl. Ev.* § 55. 2 *Id.* § 424. *Roscoe on Ev.* 328. 2 *Stark. Sland.* 83. And now the question is, whether the defendant may prove, in mitigation, that, before he spoke the words, it was *commonly and generally* reported, that the facts charged by the words spoken, were true ?

As we have said, it seems now to be settled, that a plaintiff of a degraded reputation and character, ought not, in an action of slander, to recover the same amount of damages as one of a pure and spotless name. And upon this principle,

in the case of the Earl of *Leicester* v. *Walter*, 2 *Campb.* 251. it was decided, that in an action for a libel, the defendant might prove, in mitigation of damages, that at the time of the publication, the plaintiff was generally suspected to be guilty of the charge imputed to him; and this because such general suspicions detracted from his reputation. So in the case of *Wyatt* v. *Gore, Holt's N. P. Ca.* 299. it was holden, that the defendant might show, that the substance of the libel had before been published in a newspaper, and thus generally circulated. Again, in —— v. *Moor*, 1 *Mau. & Selw.* 285. a witness was admitted to testify, that he had heard reports in the neighbourhood, that the plaintiff had been guilty of practices similar to the crime charged. And Lord *Ellenborough*, in admitting the evidence, said, " certainly, a person of disparaged fame is not entitled to the same measure of damages with one whose character is unblemished."

Although the evidence admitted in the cases cited might not amount to a general impeachment of character, or even to an impeachment of it in respect to the crime charged, it certainly did, and in all such cases must, impair a general good character, to some extent.

But the case we are considering, we need not compare with any of the cases we have referred to, either in this state or in *England*. This is not a case where the evidence offered was of nothing more than suspicions and rumors, but where the facts repeated by the defendant, were *commonly and generally reported to be true.* Could this be so, and yet the plaintiff be a person of unsullied fame? But it is not upon this ground alone, or chiefly, that we think this evidence was admissible.

There was a general report throughout the community, that the facts stated by the defendant were true, and he added the weight of his declaration to the current story. He repeated the news of the day.

The question of intention, in these actions, is always prominent. Intent is of the gist of the action; at least, it lies at the foundation of damages; and although malice will be presumed from the falsehood of the words, a presumption from this cause may be rebutted, and the circumstances under which they were spoken, may always be shown, to give to them their true character. Without resorting to any refine-

ments on this subject, we ask, does not every man feel, that, as a juror, he could never punish with the same amount of damages the reporter of a current story, although false, as the man whose malice originally forged the falsehood? The evidence offered in this case, standing, as it does, on this motion, without further explanation, had, as we think, a legitimate tendency to reduce the damages. And the plaintiff could not complain of surprise, as has been suggested in some of the cases, as a reason for rejecting evidence of particular facts, because common and general report is presumed to have been as well known by himself as by others. If, however, the defendant had participated in originating the false reports, or had given them a currency by repetition, with a knowledge or well founded belief of their falsehood, his guilt would have been aggravated, and the damages, for such reason, should have been increased.

<em>Hartford,</em><br>August, 1850.<br>Case<br><em>v.</em><br>Marks.

After all, the defendant cannot now avail himself of the opinions and principles we have advanced; for although the evidence which he offered on this point, was objected to, and rejected; yet the objection was seasonably withdrawn, and while the witness, of whom the enquiry was made, was yet in court; and the defendant declined to repeat his question to him, and therefore waived this subject of enquiry, from which, we must suppose, that he was not in earnest in making the enquiry at first. Under such circumstances, we cannot advise a new trial.

In this opinion the other judges concurred.

New trial not to be granted.