Ware v. Cartledge.

## WARE vs. CARTLEDGE.

1. In slander for words spoken which are actionable in themselves, it is not necessary to aver in the declaration the name of the person to whom, or in whose presence, they were spoken.
2. Evidence of the defendant's wealth is not admissible for the plaintiff in an action of slander.
3. Where the words spoken impute to plaintiff (an unmarried female) a want of chastity, evidence of other acts and words on the part of defendant, committed and spoken subsequent to the speaking of the words charged, but before the commencement of the suit, implying a want of chastity on the part of plaintiff, and indicating a desire to harrass, insult and degrade her, but not forming of themselves a separate cause of action, are admissible for plaintiff to show malice.
4. An infant cannot appoint an agent, nor make any binding contract in relation to the compromise of slanderous words spoken of him, if, on coming of full age, he think proper to disavow and annul it.

ERROR to the Circuit Court of Tallapoosa.

Tried before the Hon. ROBERT DOUGHERTY.

THIS was an action of slander for words spoken imputing to the plaintiff a want of chastity; she being an unmarried woman under the age of twenty-one years, and suing by her next friend.

There was a demurrer to the declaration, which was overruled. The several rulings of the court on the trial, to which exceptions were taken, are set out in the opinion.

RICE & MORGAN, for plaintiff in error:

1. The declaration is defective, because it contains no sufficient averment of the publication of the words. The discourse is limited to one ————, and there is no averment of the presence of others. " It is insufficient to aver that the words were spoken, without stating them to have been spoken in the presence of some one, or without some averment which necessarily implied a publication to a third person."—Starkie on Slander, p. 265 (360).

2. Evidence of the amount of defendant's wealth, was improperly admitted. The mere ownership of twenty thousand dollars worth of property, is not legal evidence of the owner's rank and influence in society. Greenleaf and Starkie agree, that the defendant's ability to pay is not a legitimate inquiry in an action of slander, and the courts of New Jersey agree with them ; and this conclusion is fortified by the general principles regulating the assessment of damages.—Green. Ev. § 269 ; Starkie on Slander, p. 402 ; Coxe's (N. J.) R. 77, 80 ; Seay v. Greenwood, 21 Ala. 495 ; Jones v. Donnell, 13 ib. 490. Opposed to this array of principles and authorities, one or two States have, without reason, and contrary to principle, adopted a different rule. Case v. Marks, 20 Conn. 248, shakes the force of Bennett v. Hyde, 6 Conn. and in Morris v. Barker, 4 Harr. R. 520, it was expressly held, that the defendant's circumstances cannot be given in evidence in an action of slander. Again ; if the plaintiff, in such an action, claims increased damages from the fact that defendant is wealthy, that fact ought to be averred in the declaration.— Donnell v. Jones, 13 Ala. 490 ; Seay v. Greenwood, 21 ib. 495.

3. When several pleas are filed, and issue is taken on each plea, if one of them is proved by the evidence, the defendant is entitled to a verdict on that plea. The court, therefore, erred in its charge.—Cullum v. Bank, 4 Ala. 39.

4. Each portion of the evidence objected to should have been excluded. The presumption of malice, sought to be drawn from such evidence, is strained and far-fetched.

L. E. Parsons and J. E. Belser, *contra* :

1. There was no error in allowing evidence of the value of defendant's property : it was one means of enabling the jury to judge of his rank and condition of life, and about the only one which can be fixed on with any certainty. It is expressly decided to be legal evidence, in numerous cases, and with a view to vindictive damages.—Adcock v. ————, 8 Iredell 365; Bennett v. Hyde, 6 Conn. 24 ; 20 *ib.* 250 ; 3 Pick. 376 ; 15 *ib.* 506 ; 3 Mass. 546 ; 7 Pick. 86 ; 2 Green. Ev. § 89.

2. To show actual malice, publication of the slander made more than six months before, and after the action was commenced, may be proved.—Morgan v. Livingston, 2 Rich. 573.

LIGON, J.—The demurrer to the declaration, and to each count of it, was correctly overruled. The only objection taken to it as a whole, or to any of its several counts, is, that in that portion of it in which the speaking and publishing of the slanderous words is averred, they are averred to have been spoken in the presence of a person whose name is left blank. The words spoken are actionable in themselves, and it is sufficient to aver that they were spoken and published of and concerning the plaintiff. This averment necessarily implies the presence of some one, to whom, or in whose presence, publicity was given to the charge. The name of such person, if set forth in the declaration, would not render it necessary for the plaintiff to prove that the words were spoken to him, or in his presence, before she would be entitled to recover ; but if the testimony showed that they were spoken to another and a different individual, it would suffice. The injury complained of is, not that the defamatory words were spoken to this or that individual, but that publicity had been maliciously given by the defendant to a false charge against the plaintiff.—Taylor v. How, Cro. Eliz. 861 ; Starkie on Slander, 460.

2. On the trial, the plaintiff was allowed to prove, that the defendant had in his possession property of the value of twenty thousand dollars. To the admission of this proof the defendant objected ; but his objection was overruled, and he excepted.

We suppose this proof was offered for the purpose of inducing the jury to imply that the defendant's wealth entitled him to a more exalted position in society than less wealthy persons

would occupy, and thereby rendered his slanders more withering and blasting in their consequences, than they would be if uttered by one whose estate was not so large.

We are aware that in many actions for *torts*, in which vindictive damages are allowed to be given by the jury, proof of the value of the defendant's estate has been allowed to go to the jury, both in England and the United States ; but this rule is by no means universal. Conflicting authorities upon the subject are to be found both in English and American books.

In James v. Biddington, 6 Carr. & Payne 589 (25 Com. Law Rep. 553), which was an action for criminal conversation with the plaintiff's wife, Baron Alderson ruled out such proof, but admitted that, in some cases, it had been received ; he thought, however, it should be confined to actions for the breach of promise of marriage. In Bennett v. Hyde, 6 Conn. 24, it was received for the purpose of increasing the damages, upon the ground that wealth gave increased importance to the words of the slanderer. While in Case v. Marks, 20 Conn. 248, the court, without expressly overruling Bennett v. Hyde, *supra*, doubts the propriety of the rule there laid down, and seriously questions the soundness of the reasoning on which it is founded. In Adcock v. Marsh, 8 Iredell (N. C.) Rep. 360, which was an action of slander, such proof was received, but solely upon the supposed existence of a general rule in England, which allowed it in all actions in which vindictive damages can be given.

The contrariety of decision as to its admissibility, disproves the existence of any such general rule, and leaves the question as yet an open one ; it is certainly so in this court. We are inclined to believe, that this rule can only be applied universally in actions for breach of marriage promise. In these, the estate of the defendant may well be considered, as it tends to show what loss the plaintiff has sustained by the breach of promise complained of.—James v. Biddington, *supra*. This reason, however, does not apply to actions of slander, in which the falsehood of the words, and the malice with which they were spoken, form the gist of the action, and are generally the only points put in issue by the pleadings.

In Bennett v. Hyde, *supra*, C. J. Hosmer bases the admissibility of such proof upon the supposed existence of the fact, that " great wealth is generally attended with correspondent

influence; and little influence is the usual concomitant of little property."

It would seem, that, if such proof is allowable in order to aggravate the damages in such cases, when the defendant is wealthy, common justice would require, that a converse rule should prevail in the case of poor defendants, and they should be allowed to give their poverty in evidence to mitigate the damages. Yet nearly all the books declare, that this is not the case, and common sense revolts at the idea of its adoption. For sad would be the fate of that country, whose laws conceded to the insolvent bully, seducer, or slanderer, the privilege of perpetrating his wrongs with comparative impunity, under the assurance that, when sued for his practices, the damages would be graduated to his present ability to pay them, and consequently would be merely nominal. No sound principle of law tolerates such a practice.—Coxe's (N. J.) Rep. 77, 80; Morris v. Barker, 4 Harrington's (Del.) Rep. 520 ; Case v. Marks, *supra*.

That wealth often forms one element in fixing a man's position and elevation in society, may be conceded to be very generally true ; but that this alone confers high rank, and gives extensive personal and social influence, is disproved by our daily observation. Its possessors are often found among the most despised, and least influential among us. While, on the other hand, rank, influence, and power, are all combined in persons of very inconsiderable estate.

When this proof is admitted, it is upon the presumption, that wealth gives influence. Thus, the plaintiff is allowed to prove the wealth, that the jury may infer the influence ; a conclusion, in many cases, by no means legitimate. If the plaintiff is allowed to prove the neighborhood estimate of the defendant's estate, or the quantity, kind and value of his property, to show his wealth, should not the latter be allowed to show, that he is largely indebted, and that if his debts were paid he would be poor ? Again ; should he not be allowed to show also that, although his estate was large, his influence was small? We mention these considerations, for the purpose, not only of showing the unsoundness of the rule under which the court below received this proof, but also to show how inconvenient such a rule would be in practice, if the principle upon which it rests should be extended to other matters, to which, in common justice,

they should be extended, and to which they are equally applicable. Numberless collateral issues would necessarily arise, to withdraw the attention of the jury from the main one, and, in many cases, lead to injustice. For these reasons, we esteem it unsafe, and cannot adopt it.

The wealth or poverty of the defendant has nothing to do with his guilt or innocence of the slander, nor does it tend to show malice, or the want of it, in uttering the words complained of; it is, therefore, wholly irrelevant. For these reasons we are of opinion that the court erred in permitting the testimony to go to the jury.—2 Greenleaf's Ev. 221, 222, § 269.

3. On the trial, after proving the utterance and publication of the slander as it is laid in the declaration, the plaintiff offered to prove, in order to show express malice in the defendant, that after the words complained of had been spoken, and before the suit was brought, he did, on two occasions, in presence of other persons, so act and speak to her, as to imply that she was unchaste, and a common strumpet; neither the words used on such occasions, nor the act done, forming, of themselves, a separate cause of action, but indicating a desire to harrass, insult, and oppress the plaintiff's feelings, and to degrade her in society. The court allowed the conduct and words of the defendant in this respect to go to the jury; to which the defendant excepted. The acts and words thus proved are much too gross and brutal to find a record in this opinion, and could only arise from a malice which would be satisfied with nothing short of the utter degradation of its victim. It is deeply to be deplored that this purpose, so apparent, had not been seen by the counsel for the defendant, at the time of the trial below, and thus the records of this court might have been freed from the foul and vulgar blot which their recital in the bill of exceptions has indelibly placed upon them. It is painful and offensive to read the recital, and leads us to the conclusion, that the defendant is capable of descending to any depths of moral degradation, if by that means his malice against the plaintiff could be gratified, and she become degraded in the estimation of those who were the witnesses of his words and conduct. The court below did not err in allowing either portion of this proof to go to the jury, for the purpose of showing express malice on the part of the defendant.—3 Pick. 376; 2 Richardson 573.

4. It appears that the plaintiff is an unmarried woman, under the age of twenty-one years, and has no guardian. On the trial, the defendant, among other things, pleaded accord and satisfaction; and under this plea, he offered to prove the payment to the brother-in-law of the plaintiff, of the sum of $50 00, as an agreed compensation for injury complained of. He also offered some proof tending to show that the brother-in-law was authorized by the plaintiff to make this compromise, and accept this satisfaction. The proof on this subject was contradictory, and the brother-in-law deposed that he had no authority from the plaintiff to make the compromise. The court charged the jury, on this part of the case, " that if they believed the plaintiff to be under twenty-one years of age, at the time the compromise was made and the satisfaction received by Harris (her brother-in-law), and at the commencement of this suit, they could not find for the defendant on the issue of accord and satisfaction." To this charge the defendant excepted.

The charge is correct. An infant cannot appoint an agent, nor make a contract binding on himself, in relation to matters like those here involved, if, on coming of full age, he think proper to disavow and annul it. Had the proof on this part of the case been clear as to the plaintiff's assent to the compromise, still the charge is correct, as such an agreement would not bind her.

For the error heretofore noted, the judgment of the court below is reversed, and the cause remanded.