[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 889 
 On Application for Rehearing
The opinion of December 19, 2003, is withdrawn and the following opinion is substituted therefor.
Tim Stafford sued Delta Health Group, Inc. ("Delta Health"), in the Choctaw Circuit Court alleging, among other things, defamation and fraud; his wife Lana Stafford asserted a derivative claim alleging loss of consortium. A jury returned a verdict in favor of the Staffords, awarding Tim Stafford $200,000 in compensatory *Page 890 
damages and $200,000 in punitive damages, and awarding Lana Stafford $100,000 on her loss-of-consortium claim. The trial court entered a judgment on the jury's verdict.
Delta Health filed a motion for a judgment as a matter of law and a motion for remittitur or, in the alternative, a motion for a new trial. The trial court denied those motions. Delta Health appealed. We reverse and remand for a new trial.
 Facts and Procedural History
Delta Health operates approximately 45 nursing homes in the Southeastern states; Willow Trace Nursing Home, located in Butler, Alabama, is one of those nursing homes. Beginning in 1994 until August 1997, Tim Stafford worked as the maintenance supervisor for Willow Trace. He resigned in August 1997 to take a higher paying position with another employer.
During an internal study conducted in 1999, Delta Health could not account for certain building materials purchased on Willow Trace's account during the period from December 1996 through August 1997. Anthony Perotta, director of maintenance for Delta Health, reviewed a number of the purchase invoices for the materials in question and determined that Tim Stafford had signed the invoices. Perotta also indicated that some of the wiring purchased during that period, "Romex" brand wire, was a residential-grade wire inappropriate for use at the nursing home[1] and that the amount of materials purchased during that period was greater than the amount of materials normally used at Willow Trace during that time frame.
Perotta requested that James Dew, the director of maintenance at Willow Trace, inspect the nursing home to determine if the building materials purchased on Willow Trace's account had been used at Willow Trace. Dew reported that the materials purchased included a residential-grade wire that was inappropriate for use as a permanent fixture in a commercial building such as a nursing home. He indicated that he had inspected Willow Trace but had not found any evidence indicating that the wire in question had been used there.
Based on this information, Delta Health concluded that someone had stolen the building materials — i.e., purchased the materials on Willow Trace's account and not used the materials at Willow Trace. Susan Fox, the administrator for Willow Trace, requested that the Choctaw County sheriff's office pursue a criminal investigation. However, the sheriff told Fox that the evidence Delta Health had compiled was insufficient to support a criminal charge because no one had been seen taking the materials and no one had been seen with the materials off the premises of Willow Trace.
In July 1999, Tod Ioakim, the director of risk management for Delta Health, notified Lumbermens Mutual Casualty Company, the fidelity insurer for Delta Health, that it had suffered a loss of approximately $10,600 in building materials. Ioakim telephoned the Lumbermens agent who worked with Delta Health and, based on their conversation, the agent completed a property-loss notice. That loss notice described the loss as follows: "Employee, over a period of several months, purchased building supplies from Ace Hardware, Surplus Salvage Southern Electric (total of $10,600) to be used in the construction of his home and charged them to the insured." Under the section entitled "kind of loss" the insurance agent wrote "crime." *Page 891 
Ioakim named Tim Stafford as the employee responsible for the loss.
Lumbermens compiled and maintained a file on the claim filed by Delta Health. A summary of the insurance adjuster's conversations with the "insured" is included in this file. According to the notes relating to those conversations, the adjuster spoke with the "insured" on August 4, 1999. The file includes the following summary of that conversation:
 "Spoke to [insured] on 8/4. Advised claim filing process. He did not [have] name of [employee] but will provide. Advised they own loss [location], [which] is a nursing home. [Employee] was the maintenance supervisor at location. Director of maintenance noticed charges being made on [company] accounts at various locations . . . Ace Hardware, Southern Electric etc., that were for residential grade or type items. Began investigating and [employee] was building home and believe he was purchasing goods for home on [company] accounts. Loss is approx. 10,600. [Employee] quit around time they discovered the loss. Not confronted. [Company] notified police but small rural community and [insured] says they are doing nothing. [Employee] was related to police chief. [Insured] does not think criminal case will result."
The claims file also contains a note dated May 23, 2000, indicating that "[a]ll items in order and has been confirmed that the [insured] does not use any of the items purchased for his business." Lumbermens determined the loss suffered by Delta Health was $8,418.26. After subtracting the $1,000 deductible, Lumbermens paid Delta Health $7,418.26 on its claim. In exchange, Delta Health signed a release and assigned its rights to Lumbermens.
In October 2000, Kemper Insurance Companies, on behalf of Lumbermens, notified Stafford that he owed Lumbermens and Delta Health a total of $8,418.26 because, it alleged, he had converted the building materials from Willow Trace to his own use. Lana Stafford began communicating with Kemper; she denied that her husband had stolen any building materials from Willow Trace. She indicated that their house was completed before the time period in question. Kemper asked Tim Stafford to provide proof that he was not responsible for Delta Health's loss, but Stafford refused. On December 3, 2000, Stafford sent a letter to Willow Trace asserting that he had taken nothing from Willow Trace, that he owed no money to Willow Trace, and that Delta Health's claim that he had stolen building materials was completely false. Delta Health, Lumbermens, and Kemper conducted no further investigation to determine the validity of the claim asserted against Stafford.
In May 2001, Lumbermens sued Stafford in the Choctaw District Court alleging conversion. The complaint was filed in the name of Delta Health Group, Inc., d/b/a Willow Trace Nursing Home, and Lumbermens Mutual Casualty Co., as subrogee. Lumbermens sought to recover from Stafford $8,447.44,[2] plus interest and costs.
In June 2001, Tim Stafford and Lana Stafford sued Delta Health, Lumbermens, and various fictitiously named parties. In the complaint, Tim Stafford alleged slander, slander per se, libel, the tort of outrage, malicious prosecution and/or abuse of process, and fraud. Lana Stafford asserted a claim alleging loss of consortium. *Page 892 
Delta Health and Lumbermens filed separate motions seeking summary judgments. Tim Stafford's tort-of-outrage claim was dismissed by agreement of the parties, and the trial court dismissed without prejudice his claim of malicious prosecution and/or abuse of process on the ground that it was prematurely asserted. Because the only claims asserted against Lumbermens by Tim Stafford were the tort-of-outrage and the malicious-prosecution and/or abuse-of-prosecution claims, and because the only claim asserted by Lana Stafford against Lumbermens was a derivative one — loss of consortium — the trial court granted Lumbermens' motion for a summary judgment. Lumbermens was dismissed as a party from the action.
The claim of malicious prosecution and/or abuse of process against Delta Health was dismissed without prejudice as premature; the tort-of-outrage claim against Delta Health was dismissed by agreement of the parties. The trial court denied Delta Health's motion for a summary judgment on the remaining claims of slander, slander per se, libel, fraud, and loss of consortium.
The Staffords' claims alleging slander, slander per se, libel (those claims are hereinafter referred to collectively as "defamation claims"), fraud, and loss of consortium against Delta Health went to trial on February 24, 2002. At trial, Stafford presented evidence indicating that the construction of the Staffords' house was completed in August 1996 and that he and Lana were living in the house on August 30, 1996. Stafford also testified that he had used Romex wiring extensively at Willow Trace, particularly in the 200 Hall and 700 Hall residences. Stafford also presented the testimony of Timothy Glosson, the former director of maintenance for Willow Trace, who testified that, immediately after Stafford resigned, Glosson saw new Romex wiring "all over" the Willow Trace facility.
At trial, Stafford read excerpts from the deposition of Anthony Perotta. Perotta testified that he was told that excessive amounts of building materials had been purchased under Tim Stafford's signature. He stated that he prepared a list of excessive building materials by simply going through the invoices presented to him and picking out, to the best of his ability, what he thought would be used and what he thought would not be used at Willow Trace. Perotta admitted that the invoices were not specific and that he made assumptions and guesses in this process as to the specific materials purchased and the exact amounts purchased.[3] Perotta also admitted that he had heard "through the [rumor] mill" that Tim Stafford was building a house; however, Perotta denied ever hearing that Stafford was using or had used the building materials purchased by Willow Trace to build his house. He also did not personally investigate to determine *Page 893 
if all of the materials represented on the invoices were actually used at Willow Trace; he was primarily concerned with the use of Romex wiring because, Perotta testified, its use in a commercial setting would have created a safety hazard. To determine whether Romex wire had been used at Willow Trace, Perotta said he personally lifted up ceiling tiles to look for Romex wire. Perotta acknowledged that any wiring at Willow Trace would have to be run through conduit, but he stated that he did not cut any conduit when he was looking for the Romex wire. However, Perotta also testified that he
 "took off switch plates to the switches, pulled the switches out of the wall, looked at the back wiring where you tie in your electrical to the switch, see what kind of wire I had there. . . . Pulled out some of the outlets pulled off the outlet cover, . . . I looked at some of our light fixtures, looked in some of our junction boxes up in the ceiling.
". . . .
 "I did not bust open any conduit because there's no need to break open any conduit pipe because it [the wiring] has to go [from] point `a' to point `b.' At point `b' it needs to tie into one of the junction boxes. So, you take the cover plate off the junction box, and there is your wire."
At the close of the evidence, Delta Health requested a judgment as a matter of law on Stafford's claims of defamation and fraud, asserting that Stafford had failed to establish sufficient evidence to justify submitting either claim to the jury. Delta Health also argued that, if the defamation and fraud claims were dismissed, it was entitled to a judgment as a matter of law on Lana Stafford's derivative loss-of-consortium claim. The trial court denied this motion and submitted the Staffords' claims to the jury.
The jury returned a general verdict in favor of Tim Stafford, awarding him $200,000 in compensatory damages and $200,000 in punitive damages. The jury awarded Lana Stafford $100,000 on her loss-of-consortium claim. The trial court entered a judgment on this verdict on March 5, 2003.[4]
On March 31, 2003, Delta Health filed a postjudgment motion seeking a judgment as a matter of law and a motion for a remittitur or, in the alternative, for a new trial. On June 12, 2003, the trial court issued an order denying Delta Health's postjudgment motions. On June 26, 2003, the trial court issued a separate order withdrawing that portion of its June 12, 2003, order that addressed punitive damages and analyzing the jury's $200,000 punitive-damages award for excessiveness under the factors set forth in BMW of North America, Inc. v. Gore,517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), as well as the factors set forth in Green Oil Co. v. Hornsby, 539 So.2d 218
(Ala. 1989), and Hammond v. City of Gadsden, 493 So.2d 1374
(Ala. 1986). The trial court also addressed the impact of §6-11-21, Ala. Code 1975, on the punitive-damages award. The trial court found the punitive-damages award not to be excessive and again denied Delta Health's motion for a remittitur of the punitive damages. *Page 894 
On July 3, 2003, Delta Health filed its notice of appeal, appealing from the trial court's denial of its postjudgment motions. On appeal, Delta Health raises a number of issues.
 I. Issues Presented A. Issue Relating to Denial of Motion for Judgment As a Matter of Law "I. Whether the circuit court erred in not granting Delta Health Group's post-verdict motion for judgment as a matter of law, when:
 "(a) Tim Stafford failed to present substantial evidence that Delta Health ever made a false and defamatory statement about him;
 "(b) Tim Stafford failed to present substantial evidence of actual malice by Delta Health, which was a required element of the defamation claim since Delta Health's statements to its insurer were subject to a conditional or qualified privilege;
 "(c) Tim Stafford failed to present substantial evidence of a material misrepresentation by Delta Health on which he relied to his detriment; and
 "(d) Tim Stafford failed to present clear and convincing evidence of malice or wantonness on the part of Delta Health, as was necessary for the imposition of punitive damages."
 B. Issue Relating to Motion for New Trial "II. Whether the circuit court erred in not granting Delta Health Group's post-verdict motion for new trial, when:
 "(a) The court erred in admitting evidence of the conduct of Delta Health's insurer, Lumbermens, in filing a lawsuit against Tim Stafford after it had paid Delta Health's claim;
 "(b) The court erred in admitting evidence of letters (actually standard form advertisements) sent to Tim Stafford from various bankruptcy attorneys which Tim Stafford never read;
 "(c) The court erred in admitting evidence of hearsay statements attributed to the local sheriff and assistant district attorney;
 "(d) The court erred in excluding videotape evidence of the 200 Hall [residence] of the Willow Trace facility proffered by Delta Health, which was rebuttal evidence to testimony given by Tim Stafford and Tim Glosson for the first time at trial;
 "(e) The court erred in many other evidentiary rulings;
 "(f) The court erred in refusing to give several jury charges requested by Delta Health; and
 "(g) The court erred in making several charges to the jury."
 C. Issue Relating to Motion for Remittitur "III. [Whether the circuit court erred in not
ordering a remittitur of]
 "[a] the compensatory damages to Tim Stafford and to Lana Stafford, or in the alternative a new trial, based on the Plaintiffs' failure to present sufficient evidence to support such large monetary awards.
 "[b] the compensatory damages to Tim Stafford and to Lana Stafford, or in the alternative a new trial, when the injury claimed by the Plaintiffs was based upon the mere fear of potential future injury to Tim Stafford's reputation.
 "[c] the punitive damage[s] award to Tim Stafford based on its failure to hold that Delta Health was a `small business' under Ala. Code 1975, § 6-11-21, the punitive damages cap. *Page 895 
 "[d] the punitive damage[s] award to Tim Stafford, or in the alternative a new trial, based on its failure to properly apply the guideposts established by BMW of North America v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), as well as the factors set forth in Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala. 1989), and Hammond v. City of Gadsden, 493 So.2d 1374 (Ala. 1986)."
 II. Analysis
Delta Health argues that the trial court erroneously denied its motion for a judgment as a matter of law as to Stafford's defamation and fraud claims. Delta Health says that Stafford failed to produce substantial evidence of the elements of his defamation claims; that Stafford failed to overcome the conditional privilege that attached to Delta Health's communications to Lumbermens; that Stafford failed to present substantial evidence to show that he relied on any misrepresentation made by Delta Health; and that Stafford failed to present substantial evidence indicating that Delta Health acted with malice or wantonness, as required to recover punitive damages. As this Court recognized in City of Birmingham v.Sutherland, 834 So.2d 755 (Ala. 2002):
 "Our review of the grant or denial of a motion for a judgment as a matter of law is governed by the following standard:
 "`"The standard of review applicable to a motion for directed verdict or judgment notwithstanding the verdict [now referred to as preverdict and postverdict motions for a judgment as a matter of law] is identical to the standard used by the trial court in granting or denying the motions initially. Thus, when reviewing the trial court's ruling on either motion, we determine whether there was sufficient evidence to produce a conflict warranting jury consideration. And, like the trial court, we must view any evidence most favorably to the non-movant."'"
834 So.2d at 758 (quoting Glenlakes Realty Co. v. Norwood,721 So.2d 174, 177 (Ala. 1998), quoting in turn Bussey v. John DeereCo., 531 So.2d 860, 863 (Ala. 1988) (bracketed language added inGlenlakes Realty)).
 A. Stafford's Defamation Claims
We first review the record to determine whether Stafford presented sufficient evidence of each of the elements of his defamation claims to produce a conflict for a jury to resolve.
 "To establish a prima facie case of defamation, the plaintiff must show [1] that the defendant was at least negligent, [2] in publishing [3] a false and defamatory statement to another [4] concerning the plaintiff, [5] which is either actionable without having to prove special harm (actionable per se) or actionable upon allegations and proof of special harm (actionable per quod)."
Nelson v. Lapeyrouse Grain Corp., 534 So.2d 1085, 1091 (Ala. 1988) (citations omitted). We conclude that Stafford presented sufficient evidence to justify submitting his defamation claims to the jury.
Delta Health reported to Lumbermens that a former employee had misappropriated building materials from Willow Trace. Delta Health reported that Stafford was the employee responsible for that loss. The jury heard Ioakim testify that neither he nor anyone else employed by Delta Health actually knew that Stafford had stolen the building materials but that they concluded he must have done so simply because his signature was on the purchase invoices relating to the building *Page 896 
materials. This is sufficient evidence to create a jury question on the issue whether Delta Health acted negligently, recklessly, or intentionally in reporting that Stafford had stolen the building materials from Willow Trace.
The second element of a defamation claim is publication to another. "A plaintiff usually satisfies the publication element by proof of communication of the defamatory matter to someone other than himself. W. Prosser, The Law of Torts § 113, at 776 (4th ed. 1971)." K-Mart Corp. v. Pendergrass, 494 So.2d 600,602 (Ala. 1986). It is undisputed in this case that Delta Health communicated the allegedly defamatory statements to Lumbermens, although, as later discussed, those communications were entitled to a qualified privilege. Therefore, Stafford presented sufficient evidence of publication.
The third element of a defamation claim is that the communication be false and defamatory. Stafford presented evidence indicating that Delta Health communicated false and defamatory statements to Lumbermens, i.e., statements that Stafford misappropriated the building materials, that Stafford left his employment with Willow Trace around the time Delta Health discovered the loss, and that Stafford was related to the police chief and that therefore nothing would be done about the alleged theft.
However, the jury heard Stafford testify that he did not steal anything from Willow Trace. The jury also heard testimony from Timothy Glosson, who was employed as the director of maintenance after Tim Stafford resigned, that he had seen Romex brand wiring, which was included among those building materials Stafford had allegedly used in the construction of his house, "all over" the Willow Trace facility. The jury also heard Ioakim testify that neither he nor anyone else employed by Delta Health actually knew that Stafford had stolen the building materials; instead, they concluded that he must have done so simply because Stafford's signature was on the purchase invoices. Additionally, although Ioakim denied telling Lumbermens that Stafford left his employment with Willow Trace around the time Delta Health discovered the loss and denied telling Lumbermens that Stafford was related to the police chief, Lumbermens' claim file indicated that "the insured" reported this information, and Ioakim was Lumbermens' contact with Delta Health. We conclude that Stafford presented sufficient evidence to create a jury question as to whether the statements made to Lumbermens by Delta Health were false and defamatory.
A plaintiff must establish as the fourth element of a defamation claim that the statements concern the plaintiff. It is undisputed that the statements made to Lumbermens concerned Tim Stafford.
As the final element of a defamation claim, a plaintiff must establish damage. Damage is implied by law when spoken words are found to be slander per se. Anderton v. Gentry, 577 So.2d 1261
(Ala. 1991); Sunshine Invs., Inc. v. Brooks, 642 So.2d 408, 410
(Ala. 1994).
 "`[T]o constitute slander actionable per se, there must be an imputation of an indictable offense involving infamy or moral turpitude. . . .
 "`This distinction, however, does not deny the right to maintain an action for slander founded on oral malicious defamation subjecting the plaintiff to disgrace, ridicule, odium, or contempt, though it falls short of imputing the commission of such crime or misdemeanor. In such case the law pronounces the words actionable per quod only, and the plaintiff must allege and prove special *Page 897 
damages as an element of the cause of action.'"
Ceravolo v. Brown, 364 So.2d 1155, 1157 (Ala. 1978) (quotingMarion v. Davis, 217 Ala. 16, 18, 114 So. 357, 358-59 (1927)). Once a communication is found to be slanderous per se, a plaintiff may recover nominal or compensatory damages without proof of actual harm to his reputation or proof of any other harm. See Nelson, 534 So.2d at 1092 (quoting W. Prosser and W. Keeton, The Law of Torts § 112, at 788 (5th ed. 1984)).
Here, Delta Health imputed to Stafford the commission of a crime; Delta Health accused Stafford of stealing its building materials. That accusation constitutes slander per se. Thus, Stafford was relieved of the requirement that he prove actual harm to his reputation or any other actual damages. See Nelson, 534 So.2d at 1092. We conclude that Stafford presented substantial evidence of each of the elements of his defamation claims.
Delta Health next argues that the trial court erroneously denied its motion for a judgment as a matter of law because, it argues, Stafford did not produce sufficient evidence establishing that the defamatory communications were made with actual malice; thus, Delta Health argues, Stafford did not overcome the conditional privilege attached to Delta Health's communications to Lumbermens. (Delta Health's brief at pp. 33-35.)
 "Where the defendant acted in the discharge of any public or private duty, whether legal or moral, which the ordinary exigencies of society, or his own private interest, or even that of another, called upon him to perform, the law simply withdraws the inference of malice, and gives protection to the defendant upon the condition that actual or express malice is not shown by the plaintiff. . . ."
Alabama Pattern Jury Instructions: Civil 23.12 (2d ed. 1993). See also Butler v. Town of Argo, 871 So.2d 1 (Ala. 2003). The trial court held, and we agree, that Delta Health's communications to Lumbermens — its insurer — were protected by a qualified privilege. Therefore, for the trial court to have properly denied Delta Health's motion for a judgment as a matter of law, Stafford must have presented sufficient evidence to create a jury question as to whether the communications were made with common-law actual malice. Common-law actual malice may be established by adducing
 "`evidence of "previous ill will, hostility, threats, rivalry, other actions, former libels or slanders, and the like . . . or . . . violence of the defendant's language, [and] the mode and extent of publication, and the like." Kenney v. Gurley, 208 Ala. 623, 626, 95 So. 34, 37 (1923).'"
Nelson, 534 So.2d at 1095 (quoting Webster v. Byrd,494 So.2d 31, 36 (Ala. 1986)).
We conclude that Stafford presented sufficient evidence to create a conflict for the jury on the question whether Delta Health made the communications with actual malice. The record contains the following evidence in support of Stafford's claim that Delta Health acted with actual malice: Delta Health accused Stafford of using the materials to build his own house, but no one associated with Delta Health ever questioned Stafford about the materials or investigated whether he was actually building a house during the period in which the materials were purchased; Delta Health "concluded" that because Stafford signed the invoices, he must have stolen the materials; Ioakim never told Lumbermens that Stafford had to obtain prior authorization from management at Willow Trace in order to purchase building materials; Ioakim failed to tell Lumbermens *Page 898 
that the sheriff refused to pursue criminal action against Stafford because he thought the evidence was insufficient, and, instead, the "insured" reported to Lumbermens that no criminal case would result because Butler was a small rural community and Stafford was related to the police chief; and Ioakim reported that Perotta had inspected Willow Trace to see if Romex brand wire was used there, but that he had located none. Additionally, the jury heard the testimony of Timothy Glosson, who testified that he did, in fact, see Romex brand wire "all over" Willow Trace and that Romex brand wiring had been used to wire new air conditioners at Willow Trace. This testimony directly supported Stafford's testimony that he used Romex wire at Willow Trace and called into question whether Delta Health had, in fact, searched the facility for Romex wire.
Delta Health claims that, at most, this evidence could amount to negligence or recklessness, but not malice, and that the trial court erred in denying its motion for a judgment as a matter of law. We disagree. The "determination of malice in defamation cases is particularly within the province of the jury." Cousinsv. T.G. Y. Stores Co., 514 So.2d 904, 906 (Ala. 1987). We conclude that Stafford presented sufficient evidence of actual malice to create a conflict to be resolved by the jury.
Stafford presented sufficient evidence of each of the elements of his defamation claims. He also presented sufficient evidence of actual malice to overcome the qualified privilege attached to Delta Health's communications. Therefore, the trial court did not err in denying Delta Health's motion for a judgment as a matter of law on Stafford's defamation claims. Those claims were properly submitted to the jury.
 B. Stafford's Fraud Claim
Delta Health next argues that Stafford failed to present substantial evidence of the necessary elements of his fraud claim and that, therefore, Delta Health's motion for a judgment as a matter of law on this claim should have been granted. In order to create a jury issue on his fraud claim, Stafford must have produced sufficient evidence to create a jury question on each of the elements of fraud, that is, whether Delta Health made a false representation of an existing fact, whether Stafford reasonably relied on that representation, and whether, as a proximate result of that reliance, Stafford was damaged. See, generally, Boacklev. Bedwell Constr. Co., 770 So.2d 1076 (Ala. 2000); Ex parteAlabama Dep't of Transp., 764 So.2d 1263 (Ala. 2000); Brushwitzv. Ezell, 757 So.2d 423 (Ala. 2000).
In this case, Stafford does not argue that he reasonably relied upon a representation made by Delta Health. Stafford argues that Lumbermens reasonably relied upon false representations Delta Health made to Lumbermens and that Lumbermens' reliance proximately caused Stafford's damage. Stated differently, Stafford argues that Lumbermens would not have sued Stafford in the district court, thereby injuring Stafford's reputation, but for Lumbermens' reliance upon Delta Health's misrepresentations. Stafford argues that, under Thomas v.Halstead, 605 So.2d 1181 (Ala. 1992), and Doss v. SerraChevrolet, Inc., 781 So.2d 973 (Ala.Civ.App. 2000), this is sufficient to create a cause of action for fraud against Delta Health.
In Thomas v. Halstead, the Court stated:
 "While generally `[a] stranger to a transaction . . . has no right of action [for fraud]' there is an exception to this general rule: `If a third person is injured by *Page 899 
the deceit, he may recover against the one who made possible the damages to him by practicing the deceit in the first place.' 37 C.J.S. Fraud § 60, p. 344 (1943). See Sims v. Tigrett, 229 Ala. 486, 158 So. 326 (1934).
 "In Alabama, it is not always necessary to prove that a misrepresentation was made directly to the person who claims to have been injured. In Sims v. Tigrett, 229 Ala. 486, 491, 158 So. 326 (1934), this Court stated:
 "`But we may observe that if defendant caused the representations to be made, and the public were intended to be thereby induced to act upon them, and plaintiff was within the class of those so contemplated, the action for deceit against defendant may be maintained by plaintiff, though defendant did not sell the bonds to plaintiff, but sold them to another, and he to plaintiff, both in reliance on the truth of the representations. King v. Livingston Mfg. Co., 180 Ala. 118, 126, 60 So. 143; 26 C.J. 1121, §§ 47, 48.'
"Sims, 229 Ala. at 491, 158 So. at 330."
Thomas, 605 So.2d at 1184-85.
We agree with Stafford that in certain limited circumstances not relevant here a plaintiff may properly state a fraud claim even though the defendant makes a false representation to a third party rather than to the plaintiff. However, we do not readThomas as excusing a plaintiff from the requirement of establishing his reliance upon that misrepresentation. Thomas
appears to contemplate that the plaintiff, in fact, has relied on the defendant's misrepresentation, even though the misrepresentation was made to another party. Neither have we located any other authority that purports to excuse a plaintiff in a fraud action from establishing the element of reliance.
In this case, the record is devoid of any evidence tending to establish that Stafford relied to his detriment on any of the alleged misrepresentations made by Delta Health to Lumbermens. For this reason, we conclude that Stafford failed to produce sufficient evidence to create a jury question on each of the elements necessary for his fraud claim. Therefore, the trial court erred in denying Delta Health's motion for a judgment as a matter of law regarding Stafford's fraud claim; that claim should not have been submitted to the jury.
Because we have concluded that Stafford's defamation claims were properly submitted to the jury but that his fraud claim was improperly submitted to the jury, and because the jury returned a general verdict, we are faced with a "good count-bad count" situation analogous to that discussed in Aspinwall v. Gowens,405 So.2d 134 (Ala. 1981). Delta Health, by its motion for a judgment as a matter of law, argued that Stafford's evidence in support of his fraud claim was insufficient to create a jury question on that claim. The trial court improperly denied that motion and submitted the fraud claim to the jury. The jury returned a general verdict and we cannot assume that the jury's damages award was based only on Stafford's defamation claims. The judgment entered on the jury's verdict must be reversed and this cause remanded for a new trial on Stafford's defamation claims. See Aspinwall, supra; Life Ins. Co. of Georgia v. Smith,719 So.2d 797 (Ala. 1998). Because we are reversing the judgment as to Stafford's defamation and fraud claims, we must also reverse the judgment entered on the jury's verdict on Lana Stafford's derivative loss-of-consortium claim and remand for a new trial on that claim. Because of our resolution of the above issues, we pretermit all other issues raised on appeal. *Page 900 
APPLICATION OVERRULED; OPINION OF DECEMBER 19, 2003, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED.
SEE, BROWN, JOHNSTONE, and HARWOOD, JJ., concur.
[1] Stafford and Timothy Glosson, both of whom worked in the maintenance department at Willow Trace, disputed this claim at trial.
[2] It is unclear from the record why this figure does not match the amount Lumbermens determined to be the loss suffered by Delta Health and reported earlier in this opinion — $8,418.26.
[3] Perotta acknowledged that some of the invoices did not indicate the specific type of building materials purchased, other than to indicate a general description such as "electrical supplies" or "plumbing supplies." He also acknowledged that some of the invoices did not indicate the specific amounts of the specific building material purchased. Perotta testified that, because of those omissions on the invoices, he sometimes had to make certain assumptions as to the specific material purchased or the specific amount purchased. However, despite those omissions, Perotta prepared for Lumbermens a detailed list itemizing the building materials allegedly purchased by Tim Stafford and not used at Willow Trace and the specific amount of those materials purchased. He claimed that those materials were not used at Willow Trace and that the amount of materials purchased was excessive. Perotta admitted that it might have been an error to work from his prepared list, which was based on assumptions, rather than working from the invoices when he submitted the claim to Lumbermens.
[4] On February 27, 2003, the Choctaw Circuit Court returned a judgment in the case of Delta Health Group and Lumbermens, assubrogee v. Timothy Stafford; that action had been transferred to the Choctaw Circuit Court from the district court and was conducted as a bench trial simultaneously with the trial of this action. The Choctaw Circuit Court ruled in favor of Stafford and against Delta Health and Lumbermens. The trial court sealed the judgment until after the conclusion of this case.