HARWOOD, Justice.
Crawford Broadcasting Company, Russ Fine, and Dee Fine (“the petitioners”) petition this Court for a writ of mandamus directing the trial court to vacate its order enforcing a provision of a subpoena duces tecum requiring Crawford Broadcasting Company to produce certain payroll records relating to Russ Fine and Dee Fine (“the Fines”). The Fines are radio talk-show hosts whose morning show, “Russ and Dee in the Morning,” is broadcast from Birmingham-based radio station WYDE-FM 101.1, “The Source.” Crawford Broadcasting Company (“Crawford”) owns the radio station and employs the Fines.
During their November 6, 2003, show, the Fines made numerous statements on the air concerning Ted Dial, a former councilman for the City of Hanceville, who at the time of the Fines’ statements was the building inspector for the City of Hanceville. The Fines stated that Dial was opposed to what they said was a beneficial city project in Hanceville because, they said, it would hurt the view he and his wife enjoyed from the front porch of their home. The Fines suggested that Dial had a conflict of interest and that he was hindering progress in the City of Hanceville. The Fines then announced Dial’s telephone number and suggested that listeners telephone Dial and register their disapproval of his actions.
Dial and his wife Deborah (“the Dials”) sued the Fines in the Cullman Circuit Court, alleging that the Fines had defamed Dial (Count I), that the Fines had invaded the Dials’ privacy (Count II), and that the Fines’ conduct was “reckless, extreme and outrageous, amounting to character assassination” (Count III). When discovery commenced, the Dials filed a nonparty subpoena duces tecum on Crawford, ordering it to produce, among other things, “[a]ny and all payroll and payment records related to payments to Russ Fine and Dee Fine for their services as hosts of the Russ and Dee Fine program for the year 2003.” Crawford and the Fines filed with the trial court an objection to, and a motion to quash or to modify, the above provision *224 and a motion for a protective order. The trial judge denied each of those motions.
In seeking the writ of mandamus, the petitioners present one issue for our review: whether the trial court exceeded its discretion in enforcing the provision of the subpoena requiring Crawford to produce the Fines’ compensation records for the year 2003.

Standard, of Review

“ ‘Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.’ ”
Ex parte Perfection Siding, Inc., 882 So.2d 307, 309-10 (Ala.2003) (quoting Ex parte Integon Corp., 672 So.2d 497, 499 (Ala. 1995)).
“[O]ur judicial system cannot afford immediate mandamus review of every discovery order.” Ex parte Ocwen Fed. Bank, 872 So.2d 810, 813 (Ala.2003). When a petitioner seeks mandamus review of a discovery order, this Court will grant the review only after making two determinations. First, because discovery matters are within a trial court’s sound discretion, we must determine that the trial court in issuing the discovery order clearly exceeded its discretion. Second, we must ensure that the petitioner does not have an adequate remedy by appeal. 872 So.2d at 813.
“In certain exceptional cases ... review by appeal of a discovery order may be inadequate.” 872 So.2d at 813. The four most common examples of cases in which review by appeal may be inadequate, although the list is not exhaustive, are
“(a) when a privilege is disregarded ...; (b) when a discovery order compels the production of patently irrelevant or du-plicative documents, such as to clearly constitute harassment or impose a burden on the producing party far out of proportion to any benefit that may obtain to the requesting party ...; (c) when the trial court either imposes sanctions effectively precluding a decision on the merits or denies discovery going to a party’s entire action or defense so that, in either event, the outcome has been all but determined, and the petitioner would be merely going through the motions of a trial to obtain an appeal; or (d) when the trial court impermissibly prevents the petitioner from making a record on the discovery issue so that the appellate court cannot review the effect of the trial court’s alleged error.”
Ocwen, 872 So.2d at 813-14.

Analysis

The petitioners argue that their case fits both of the first two examples of an extraordinary case in which appeal would be inadequate, thus warranting mandamus review. First, they argue that the Cullman Circuit Court denied them a privilege. Second, they argue that the subpoena seeking records of the compensation paid to the Fines by Crawford in 2003 compelled patently irrelevant information so as to clearly constitute harassment.
Because we conclude that, under their second contention, i.e., that the subpoena seeks patently irrelevant information, the petitioners are entitled to the relief they seek, we pretermit any consideration of the first.
Evidence that is not relevant is not discoverable.
“Parties may obtain discovery regarding any matter, not privileged, which is rele *225 vant to the subject matter involved in the pending action.... It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably-calculated to lead to the discovery of admissible evidence.”
Rule 26(b)(1), Ala. R. Civ. P. Rule 401, Ala. R. Evid., states that “ ‘[r]elevant evidence’ means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.”
The Dials argue that evidence of the amount the Fines were paid in compensation for 2003 “establishes the critical link between the Fines’ self-interest and why they have a continuing need for targets.” The Dials contend that this link demonstrates the Fines’ “malice” in making the comment they made about Ted Dial. They argue in their initial brief:
“To know how much the Fines were paid in 2003 for their ‘talk show1 is essential because it establishes the critical link between the Fines’ self-interest and why they have a continuing need for targets they can subject to character assassination. It is part and parcel of malice to show that the Fines are in the business of igniting public passion by defaming the character of their fellow men.”
Thus, the Dials claim, the evidence has “any tendency” to prove an “actual malice” element of their defamation claim.
To establish a prima facie case of defamation, a plaintiff must show:
“[1] that the defendant was at least negligent [2] in publishing [3] a false and defamatory statement to another [4] concerning the plaintiff, [5] which is either actionable without having to prove special harm (actionable per se) or actionable upon allegations and proof of special harm (actionable per quod).”
Delta Health Group, Inc. v. Stafford, 887 So.2d 887, 891 (Ala.2004)(quoting Nelson v. Lapeyrouse Grain Corp., 534 So.2d 1085, 1091 (Ala.1988) (citations omitted)).
Although neither side has engaged in any discussion' of Ted Dial’s status as a public figure as opposed to an ordinary citizen, the Fines suggest that the Dials are public figures, and the Dials, by focusing on the “malice” element of their claim, seem to agree with this classification. A person has a First Amendment right to make false statements about a public figure without being guilty of defamation so long as those statements are not made with “actual malice.” Finebaum v. Coulter, 854 So.2d 1120, 1124 (Ala.2003). “Actual malice” has, in turn, been defined as “knowledge that [the statement] was false or ... [that it was made] with reckless disregard of whether it was false or not.” New York Times Co. v. Sullivan, 376 U.S. 254, 280, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).
The Dials’ contention that evidence of the compensation Crawford paid the Finés in 2003 is relevant to prove “malice” seems inapposite. The fact that the Fines were paid any particular amount for their work does not indicate whether they were concerned with the truth of their statements. Because evidence of compensation does not illustrate any manifestation of “actual malice” as defined by Sullivan, the Dials’ request has no connection to proving their defamation claim.
An alternative theory commonly asserted in a defamation case is that “wealth is relevant to the defendant’s rank and influence in society which thereby affects the extent to which the defamatory words have injured the plaintiff.” 1 Charles H. Gamble, McElroy’s Alabama Evidence § 189.05(2)(d) (5th ed.1996). In Ware v. Cartledge, 24 Ala. 622 (1854), however, this *226 Court rejected that theory, holding that the wealth or poverty of a defendant is “wholly irrelevant” to determining whether the defendant was sufficiently influential to affect the plaintiffs reputation. 24 Ala. at 627. As the Court explained:
“That wealth often forms one element in fixing a man’s position and elevation in society, may be conceded to be very generally true; but that this alone confers high rank, and gives extensive personal and social influence, is disproved by our daily observation. Its possessors are often found among the most despised, and least influential among us. While, on the other hand, rank, influence, and power, are all combined in persons of very inconsiderable estate.”
Ware, 24 Ala. at 626. This rule remains true today. Evidence of a party’s “compensation” is equivalent to evidence of that party’s “wealth.” The rule established in Ware demonstrates that “wealth” plays a role, along with many other factors, in determining one’s status and credibility. Were it a dominant or the sole factor in this determination, the Ware court would most likely have found wealth relevant. As we examine what role compensation plays, we note that compensation bears even less relation to one’s status than does wealth. A person can be a highly compensated social pariah or a low-paid social exemplar. The public’s perception of that person is connected less to the amount of the person’s paycheck than to what he does with his life. Thus, under our rule that the wealth of a defendant in a defamation action is irrelevant, compensation must likewise be irrelevant.
We now must determine whether the request for the Fines’ payroll records is not only irrelevant, but also “clearly constitutes harassment.” This is an issue of first impression for this Court. Salary is a highly sensitive subject for most people. The subject of the salary of a public figure is no less sensitive simply because many other aspects of the lives of a public figure are open to public scrutiny. Consequently, we hold that one’s salary information, where not a matter of public record and when “patently irrelevant,” is such a personal and private matter that compelling its production would clearly constitute harassment. Because we find these requirements of the Ocwen analysis satisfied, we conclude that the trial court exceeded its discretion in denying entirely Crawford and the Fines’ objection to the subpoena, the motion to quash or to modify the particular provision, and the motion for a protective order.
We grant the petition and issue the writ directing the trial court to quash the subpoena to the extent of the provision in question.
PETITION GRANTED; WRIT ISSUED.
NABERS, C.J., and HOUSTON, SEE, LYONS, BROWN, WOODALL, and STUART, JJ., concur.