PARKER, Justice.
Federal Credit, Inc. (“Federal Credit”), appeals from a judgment entered on a jury verdict in favor of Greg Fuller on Fuller’s claim against Federal Credit alleging defamation. We reverse the Marshall Circuit Court’s judgment and render a judgment for Federal Credit.

I. Facts and Procedural History

Before us on this appeal are only a brief filed by Federal Credit and the record on appeal; accordingly, for purposes of this appeal, we will base our decision on the facts as stated in Federal Credit’s brief. See Johnson v. Stewart, 854 So.2d 544, 551-52 (Ala.2002) (opinion on application for rehearing) (“Where the appellee makes no correction or addition to the appellant’s statement of the facts, ‘[t]he statements made by appellant ... will be taken to be accurate and sufficient for decision.’ ” (quoting Taylor v. First Nat’l Bank of Tuskaloosa, 279 Ala. 624, 628, 189 So.2d 141, 144 (1966))); Grief Bros. Cooperage Corp. v. Johnson, 31 Ala.App. 552, 553, 19 So.2d 557, 558 (1944) (“ ‘Where the facts stated in brief of appellant fully present the errors, and the appellee does not challenge such statement of the record, and point out the omissions or inaccuracies, we are fully authorized by [this Court’s] rules to accept as true appellant’s statement of the record.’ ” (quoting New York Life Ins. Co. v. Mason, 236 Ala. 44, 49, 180 So. 775, 780 (1938))).
On September 14, 2001, Federal Credit and Fuller entered into a “Deferred Presentment Service Agreement” (“the contract”), under which Fuller borrowed $1,000 from Federal Credit. Pursuant to the contract, Fuller provided Federal Credit with two checks in the amount of *7 $500 each, plus one check in the amount of $300 for a “service fee”; under the terms of the contract, Federal Credit agreed to hold Fuller’s checks until the “presentment date,” i.e., the date payment was due under the contract, October 5, 2001. Fuller, however, failed to pay the amount due under the contract on or before the presentment date. Shortly thereafter, Federal Credit presented Fuller’s checks to the bank on which the checks were drawn; the bank returned each of Fuller’s checks to Federal Credit stamped “account closed” and “payment stopped.”
On October 8, 2001, Federal Credit mailed Fuller a document styled as a “10 Day Legal Notice” (“the notice”); Federal Credit addressed the envelope containing the notice to Fuller’s employer, Charter Communications (“Charter”), with “Mr. Fuller” handwritten in significantly smaller letters immediately below “Charter Communications.”[1] When the notice arrived at Charter, three or four other employees of Charter, including Fuller’s boss, Tom Salters, viewed the notice before Fuller was called into Salters’s office and presented with the notice.[2] The notice stated:
“This statutory notice is provided pursuant to Section 13A-9~13[.]2 of the Code of Alabama.[3] You are hereby notified that a check, apparently issued by you, has been dishonored. Pursuant to Alabama Law, you have ten (10) days from receipt of this notice to render payment of the full amount of such check or instrument plus service charges, the total amount due being $1573.00. Unless this amount is paid in full within the specified time above, the holder of such check or instrument may assume that you delivered the instrument with intent of [sic] defraud and may turn over the dishonored check and all other avail *8 able information relating to this incident to the proper authorities for criminal and/or civil prosecution. A photocopy of your bad check which will be part of the evidence presented against you should this matter be transferred to the proper authorities, is attached for your review. This company utilizes the services of the District Attorney Worthless Check Unit and District Court System.”
(Boldface type and emphasis in original.) Copies of Fuller’s two checks for $500 and one check for $300 appeared at the bottom of the notice. Federal Credit had “stamped” the notice numerous times, including as follows: “DISTRICT COURT FILE EVIDENCE DATA BASE FILE # 8802 ds” next to each check; and “APPROVED OCT 8 2001 FOR PICKUP TO ALABAMA DISTRICT COURT AUTHORIZATION CODE: 8805-d.s.” (Capitalization in original.)
On October 10, 2001, Federal Credit filed a statement of claim in the small-claims division of the Marshall District Court, seeking a judgment in the amount of $1,573, plus court costs. On December 17, 2001, the district court entered the following notation on the case-action-summary sheet: “[Fuller] enters consent judgment for $1500.00 plus eost[s] for the purpose of appeal to circuit court to file counter-claim in excess of jurisdictional amount of small claims court.” On the same day, Fuller appealed to the Marshall Circuit Court.
In August 2002, Fuller filed in the circuit court a counterclaim against Federal Credit, seeking compensatory damages in the amount of $50,000 and punitive damages in the amount of $5,000,000 on claims alleging defamation and “violation of the [Alabama] Small Loan[] Act and usury.” The case was tried before a jury beginning on April 12, 2006. At the close of Fuller’s case-in-chief, Federal Credit orally moved the circuit court for a “directed verdict,”[4] arguing, in sum, that Fuller had failed to prove the elements of either defamation or usury; the circuit court partially granted Federal Credit’s motion, dismissing Fuller’s usury claim.
On April 13, 2006, the jury returned a verdict in favor of Fuller on Fuller’s defamation claim, awarding Fuller compensatory damages in the amount of $25,000 and punitive damages in the amount of $35,000.[5] On May 12, 2006, Federal Credit filed a motion for a new trial; a motion for remittitur; and a “renewal motion for a judgment as a matter of law.” In the last of those motions, Federal Credit argued that it was entitled to a judgment as a matter of law because, it said:
“Greg Fuller alleges that a letter being sent to him via his employer seeking repayment of a debt defamed him. Although indebtedness may be defamatory, the fact that he owed Federal Credit ... was absolutely true. Truth is an absolute defense to defamation. Ripps v. H[e]rrington, 241 Ala. 209, 1 So.2d 899 (1941).
“All statements in the communication were true. The letter states that Federal Credit ... utilized the services of the District Court System to collect on unpaid accounts. This statement is true and is not defamatory. In fact, Federal Credit ... did just that by initiating this *9 cause of action. The letter states that Federal Credit ... utilizes the services of the District Attorney Worthless Check Unit. This also is true. This statement recites company policy and does not defame Greg Fuller. Pursuant to Alabama law, a District Attorney can be utilized to collect on deferred presentments wherein the account has been closed or no account is in existence.
“The letter also states ‘DISTRICT COURT FILE EVIDENCE DATA BASE # 8802 ds’ and ‘Approved OCT 8 2001 FOR PICKUP TO ALABAMA DISTRICT COURT AUTHORIZATION CODE: 8805-d.s.’ These statements are true. These notations were placed on the letter for company use. These statements do not defame Greg Fuller.”
Federal Credit’s postjudgment motions were denied by operation of law on August 10, 2006.[6] Federal Credit filed a timely notice of appeal on August 30, 2006.[7]

II. Standard of Review

“ ‘When reviewing a ruling on a motion for a [judgment as a matter of law], this Court uses the same standard the trial court used initially in deciding whether to grant or deny the motion for a [judgment as a matter of law]. Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3 (Ala.1997). Regarding questions of fact, the ultimate question is whether the nonmovant has presented sufficient evidence to allow the case to be submitted to the jury for a factual resolution. Carter v. Henderson, 598 So.2d 1350 (Ala.1992). The nonmovant must have presented substantial evidence in order to withstand a motion for a [judgment as a matter of law]. See § 12-21-12, Ala. Code 1975; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury. Carter, 598 So.2d at 1353. In reviewing a ruling on-a motion for a [judgment as a matter of law], this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Id.’ ”
Phillips v. Seward, 51 So.3d 1019, 1023 (Ala.2010) (quoting Waddell & Reed, Inc. v. United Investors Life Ins. Co., 875 So.2d 1143, 1152 (Ala.2003)).

III. Discussion

“To establish a prima facie case of defamation, a plaintiff must show:
“ ‘[1] that the defendant was at least negligent [2] in publishing [3] a false and defamatory statement to another [4] concerning the plaintiff, [5] which is either actionable without having to prove special harm (actionable per se) *10 or actionable upon allegations and proof of special harm (actionable per quod).’ ”
Ex parte Crawford Broad. Co., 904 So.2d 221, 225 (Ala.2004) (quoting Delta Health Group, Inc. v. Stafford, 887 So.2d 887, 895 (Ala.2004), quoting in turn Nelson v. Lapeyrouse Grain Corp., 534 So.2d 1085, 1091 (Ala.1988) (emphasis added)).
Truth is a “complete and absolute defense” to defamation. Battles v. Ford Motor Credit Co., 597 So.2d 688, 692 (Ala.1992) (citing Jakob v. First Alabama Bank of Montgomery, 361 So.2d 1017 (Ala.1978), cert. denied, 439 U.S. 968, 99 S.Ct. 460, 58 L.Ed.2d 428 (1978); Ripps v. Herrington, 241 Ala. 209, 1 So.2d 899 (1941)). Truthful statements cannot, as a matter of law, have a defamatory meaning. See McCaig v. Talladega Publ’g Co., 544 So.2d 875, 879 (Ala.1989) (“Given the truthfulness of the published statements, the trial court correctly determined that the statements, as a matter of law, were not capable of having a defamatory meaning....”). Dispositive of Fuller’s defamation claim is the principle that truth is an absolute defense.[8]
In his counterclaim, Fuller contended that the following statements set forth in the notice were false: (1) “[T]hat [Fuller] delivered the instrument with intent of [sic] defraud.” (emphasis in original); (2) that “[t]his company [Federal Credit] utilizes the services of the District Attorney Worthless Check Unit and District Court System.” (Boldface type and emphasis in original.)
There was a paucity of evidence presented at trial regarding Federal Credit’s allegedly defamatory statements. Regarding Fuller’s allegation that Federal Credit defamed him by stating in the notice that Fuller had “delivered the instrument with intent of [sic] defraud,” the only evidence Fuller presented at trial was his testimony that he did not “write those checks with the intent to defraud anyone.”
The notice does not specifically state that Fuller delivered the checks to Federal Credit with the intent to defraud Federal Credit; rather, the notice states, in relevant part: “Unless this amount is paid in full within the specified time above, the holder of such check or instrument may assume that [Fuller] delivered the instrument with intent of [sic] defraud and may *11 turn over the dishonored check ... to the proper authorities for criminal and/or civil prosecution.” (Original emphasis omitted.) Considering the above-quoted statement in its entirety (rather than, as Fuller has done, considering only a selective part of the statement), it is clear that the statement was not an allegation that Fuller intended to defraud Federal Credit when he wrote the checks, but was instead simply a notification to Fuller of the potential consequences if he failed to pay the amount due under the contract. Although Fuller and the other employees of Charter who saw the notice might have mistakenly construed the statement as accusing Fuller of intentionally defrauding Federal Credit, the statement was not false and, therefore, is not actionable.[9]
Next, we consider Fuller’s claim that the following statement in the notice was false and therefore defamatory: “This company [Federal Credit] utilizes the services of the District Attorney Worthless Check Unit and District Court System.” (Boldface type in original.) In support of his allegation that Federal Credit falsely stated in the notice that it “utilizes” the Marshall District Court, Fuller offered the testimony of Glenda Tate, an employee of that court. Tate testified that the stamps on the notice stating “DISTRICT COURT FILE EVIDENCE DATA BASE FILE # 8802 ds” and “APPROVED OCT 8 2001 FOR PICKUP TO ALABAMA DISTRICT COURT AUTHORIZATION CODE: 8805-d.s.” were not “generated” by the Marshall District Court and that she had never seen that court use those particular stamps; Tate did not testify, however, that Federal Credit does not “utilize” that court in any prosecution resulting from a failure to pay. Furthermore, it is without question that Federal Credit “utilizes” the Marshall District Court; as noted, Federal Credit initiated the proceedings in this action by filing a statement of claim in the small-claims division of the Marshall District Court.
In support of his allegation that Federal Credit falsely stated in the notice that it “utilizes” the Marshall County District Attorney’s worthless-check unit, Fuller offered the testimony of Byron Waldrop, an attorney employed by the Marshall County District Attorney’s office. Waldrop testified that he had no personal knowledge of the Marshall County District Attorney’s office ever prosecuting persons who had presented “bad checks” to Federal Credit; however, Waldrop also testified that he “never see[s]” many of the worthless-check cases prosecuted by that office. Furthermore, Waldrop testified that the Marshall County District Attorney’s office does “prosecute checks that are written on accounts that are closed.” The evidence presented by Fuller was insufficient to show that Federal Credit falsely stated in the notice that it utilizes the Marshall County District Attorney’s office.
In view of the evidence in the record, we conclude that Fuller failed to meet his burden of making a prima facie showing that false information was reported in the notice seen by other employees of Charter; thus, Federal Credit was entitled to a judgment as a matter of law on Fuller’s defamation claim. See Liberty Loan Corp. of Gadsden v. Mizell, 410 So.2d 45, 49 (Ala.1982) (reversing the trial court’s judgment in favor of the plaintiff and directing the entry of a judgment for the defendant, concluding, in part, that a truthful statement indicating that the plaintiff owed a debt to the defendant and had refused to *12 pay the debt was not defamatory). Accordingly, the circuit court’s judgment in favor of Fuller is due to be reversed and a judgment rendered for Federal Credit on Fuller’s claim against it. See Mizell, supra; McCaig, supra.

TV. Conclusion

For the reasons discussed above, we reverse the circuit court’s judgment and render a judgment for Federal Credit.
REVERSED AND JUDGMENT RENDERED.
COBB, C.J., and STUART, SHAW, and WISE, JJ., concur.

. In the contract, Fuller provided Federal Credit with both his home address and the name and telephone number of his employer, Charter. Atha Ellis, an employee of Federal Credit, testified that Federal Credit attempted to send the notice to Fuller at his home address by certified mail; however, Ellis testified, the certified letter was either “refused” or "not claimed” by Fuller.

. We note that, with regard to Federal Credit’s mailing of the notice to Fuller at his place of employment, the contract provided: "You [Fuller] agree to the release, disclosure and use of any information contained herein and in the ... information form including but not limited to account/contract status ... to whomever deemed necessary by us.” (Emphasis added.)

. Alabama Code 1975, § 13A-9-13.2, which is entitled "Negotiating worthless negotiable instrument — Notice of refusal of payment upon instrument,” provides, in relevant part:
"(1) Notice mailed by certified or registered mail, evidenced by return receipt, to the address printed on the instrument or given at the time of issuance shall be deemed sufficient and equivalent to notice having been received by the person making, drawing, uttering, or delivering the instrument.
"(2) The form of notice shall be substantially as follows:
" 'This statutory notice is provided pursuant to Section 13A-9-13.2 of the Alabama Code. You are hereby notified that a check or instrument numbered ., apparently issued by you on .(date), drawn upon. (name of bank), and payable to ., has been dishonored. Pursuant to Alabama law, you have 10 days from receipt of this notice to tender payment of the full amount of the check or instrument plus a service charge of not more than (fill in appropriate amount provided by law), the total amount due being $. Unless this amount is paid in full within the specified time above, the holder of such check or instrument may assume that you delivered the instrument with intent to defraud and may turn over the dishonored instrument and all other available information relating to this incident to the proper authorities for criminal prosecution.’ ”

. Rule 50(a), Ala. R. Civ. P., effective October 1, 1995, was amended to rename a "motion for a directed verdict” a "motion for a judgment as a matter of law.”

. The record on appeal reveals that Fuller consented to the entry of a judgment against him in the circuit court in the amount of $1,500. ("The nominal defendant [Fuller] has consented to judgment in the amount of $1,500.”)

. The circuit court entered a notation on the case-action-summary sheet on August 14, 2006, purporting to deny Federal Credit's postjudgment motions. However, the circuit court’s denial of Federal Credit’s post-judgment motions was ineffective because it occurred more than 90 days after Federal Credit had filed those motions. See Rule 59.1, Ala. R. Civ. P. ("No postjudgment motion filed pursuant to Rules 50, 52, 55, or 59 shall remain pending in the trial court for more than ninety (90) days.... A failure by the trial court to render an order disposing of any pending postjudgment motion within the time permitted hereunder ... shall constitute a denial of such motion as of the date of the expiration of the period.”).

. On October 30, 2006, this Court stayed the proceedings on appeal and placed this case on its administrative docket because Federal Credit had filed a suggestion of bankruptcy. The case was returned to this Court’s active docket on January 11, 2010.

. Federal Credit also argues, among other things, that the circuit court’s judgment is due to be reversed because, Federal Credit says, it is immune from civil liability in this case under Ala.Code 1975, § 13A-9-13.2(3), which provides:
"Any party holding a worthless negotiable instrument and giving notice in substantially similar form to that provided in subdivision (2) of this section shall be immune from civil or criminal liability for the giving of the notice and for proceeding under the forms of the notice.”
However, the record on appeal reveals that Federal Credit did not raise this argument in the circuit court. This Court has held that other forms of statutory immunity are affirmative defenses that are waived if not affirmatively pleaded. See Bechtel v. Crown Central Petroleum Corp., 451 So.2d 793, 795 (Ala. 1984) ("[W]e hold that the defense of statutory employer immunity is an affirmative defense in Alabama, and is subject to the pleading requirements of Rule 8(c)[, Ala. R. Civ. P.J and the case law regarding such a defense.”). Because Federal Credit failed to raise the defense of statutory immunity under § 13A-9-13.2(3) in the circuit court, it has waived this defense for appellate review; thus, we cannot consider this argument. See Ex parte Ford Motor Co., 47 So.3d 234, 241 (Ala.2010) (" ‘ "This Court cannot consider arguments raised for the first time on appeal; our review is restricted to the evidence and arguments considered by the trial court.” ’ ” (quoting Marks v. Tenbrunsel, 910 So.2d 1255, 1263 (Ala.2005), quoting in turn Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992))).

. Furthermore, we note that Fuller admitted at trial that he did not pay the amount due under the contract in a timely manner.