DONALDSON, Judge.
Gene Ponder appeals a summary judgment entered by the Baldwin Circuit Court (“the trial court”) in favor of Lake Forest Property Owners Association, Inc. (“LFPOA”), on Ponder’s claims against LFPOA and on LFPOA’s counterclaims against Ponder. Ponder also appeals the dismissal of his claims against the members of the LFPOA Board of Directors (“the Board”) in their individual capacities.
Many of the dispositive facts of this case are undisputed, and both Ponder and LFPOA moved for summary judgment based on those facts. LFPOA is a nonprofit corporation that was formed in Baldwin County in 1971, whose members are property owners within the Lake Forest subdivision. At all times relevant to this action, Ponder and his wife have owned a residence in the Lake Forest subdivision subject to the purview of LFPOA. Before October 20, 2003, the LFPOA bylaws permitted amendments to the bylaws to be made only by vote of a majority of LFPOA’s members at a membership meeting. The bylaws as they existed at that time also provided that “[ajnnual increases in dues must be approved by members of the [LFPOA] at the annual meeting. The Board [has] no authority to increase dues.” On October 20, 2003, a majority of LFPOA’s members voted to amend the bylaws to allow the bylaws to be amended by a majority vote of the members of the Board.
At a regular meeting of the Board in November 2003, the Board voted to delete the newly added language in the bylaws permitting the bylaws to be amended by a “vote of a majority of the Board ... at any meeting thereof.”
*343 On April 28, 2008, the Board passed a motion rescinding its action of November 2003 that had deleted the amended language in the bylaws. The LFPOA bylaws contain a provision that states:
“Section 3.10. Rules of Meetings. All meetings of the membership and stated meetings of the Board of Directors shall be conducted in accordance with the procedures set out in the current edition of ‘Robert’s Rules of Order,’ except where such rules are superseded by the Articles of Incorporation, the By-Laws or Federal or State law.”
Article IX, § 35, of Robert’s Rules of Order (10th ed.) provides that to rescind “is to strike out an entire main motion, resolution, rule, bylaw, section, or paragraph that has been adopted at some previous time.” On September 29, 2009, the Board met and voted to “restore” Section 2.4 of the LFPOA bylaws, which had provided the process for assessing and raising membership dues, to its “original form.” Although the record does not appear to contain an “original” copy of the bylaws from 1971, the oldest amended version of the bylaws in the record is dated October 10, 1988. Section 2.4 of that version of the bylaws provided:
“Section 2.4. Dues, Charges and Assessments. Members of the Association shall be obligated to pay dues, charges and assessments imposed by the Association.
“Annual increases in dues must be approved by the members of the Association at the annual meeting. The Board of Directors has no authority to increase dues. The power of authority of the Board of Directors is limited to one (1) assessment annually, if deemed necessary, for the preservation of the Association. This assessment cannot exceed $50.00 per member annually.”
On October 4, 2009, the Board conducted a special meeting to discuss changing the amount of membership dues. At that meeting, the Board passed a motion to increase the LFPOA monthly dues by $6.00 per month effective January 2010. The Board met for another special meeting on October 10, 2009, at which the Board ratified its act of increasing the membership dues taken at the October 4, 2009, Board meeting. The record further indicates that Section 2.4 of the LFPOA bylaws as amended on October 10, 2009, provided:
“Section 2.4. Dues, Charges and Assessments. Members of the Association shall be obligated to pay dues, charges and assessments imposed by the Association. Note: Pursuant to a motion made in a special meeting on October 4th, 2009 a maximum cap of 3% can be issued by the Board of Directors as determined at the Annual Meeting.”
In October 2010, Ponder was elected to the Board and appointed as secretary of LFPOA. Upon assuming his position on the Board, Ponder signed copies of the “Board Member Code of Ethics,” “Code of Conduct,” and “Confidentiality Policy.” Ponder subsequently made several requests to LFPOA president Mary Ann Hampton to provide him with a copy of the LFPOA membership list with member email addresses, including a request by email in July 2011. Hampton replied to Ponder’s e-mail request but refused to provide the membership list on the ground that giving him the list would be a violation of federal privacy law. Ponder obtained member e-mail addresses from another source, and in August 2011, he sent an e-mail from a personal e-mail account to the member e-mail addresses he had obtained in which he listed various complaints against LFPOA, sought participation from those members in a potential lawsuit against LFPOA, and encouraged *344 members to seek to remove their properties from the purview of LFPOA. Ponder sent an e-mail from the same e-mail account to request that the Board remove his property from the purview of LFPOA, and he volunteered to remove himself from the Board once his property was removed from the purview of LFPOA. Ponder’s wife sent invitations to the same set of member e-mail addresses inviting members of LFPOA to an informational meeting at a restaurant to consider a lawsuit against LFPOA and the members of the Board. Ponder attended that meeting, which was held on August 31, 2011, and participated in a video presentation outlining his complaints.
On September 8, 2011, the Board met at a specially called meeting at which it voted to remove Ponder as a member of the Board for cause.
On July 27, 2012, Ponder filed a complaint against LFPOA and Board members Mary Ann Hampton, Richard Kersey, Ed Kirby, Travis Stone, Bill Menefee, Marie Bidney, Tony Dees, and Ray Sturch in their individual capacities. Ponder’s complaint alleged claims for relief based on allegations of conspiracy and unjust enrichment, and he sought a judgment declaring that the Board did not have the authority to amend the LFPOA bylaws in July 2011, that the Board did not have the authority to raise dues, and that the Board did not have the authority to remove Ponder as a member of the Board.
LFPOA and the individual Board members filed motions to dismiss the Board members as defendants. On December 18, 2012, the trial court entered an order granting the motion to dismiss the Board members in their individual capacities. On January 8, 2013, LFPOA filed an answer and a counterclaim against Ponder seeking damages from him based on claims alleging breach of fiduciary duty, spoliation of evidence, intentional interference with a business relationship, and defamation per se. Ponder answered the counterclaim with a general denial. On July 8, 2013, LFPOA amended its counterclaim to seek judgment declaring that the bylaws had been properly amended in July 2011, that the Board had the authority to raise dues, and that the Board had the authority to remove Ponder as a member of the Board for cause.
On July 11, 2013, Ponder amended his complaint to include a claim for relief on behalf of a class of LFPOA members who had been subject to the increased dues. Ponder also added a claim of breach of contract against LFPOA. On July 17, 2013, LFPOA filed a motion to strike Ponder’s class allegations in his amended complaint.
On September 26, 2013, LFPOA filed a motion seeking a summary judgment as to both Ponder’s claims and its counterclaims. LFPOA supported its motion with a brief and exhibits including the LFPOA articles of incorporation, the LFPOA bylaws as amended in 1988, proposed amendments submitted to the LFPOA membership in 2003, the LFPOA bylaws as amended in 2008, the LFPOA bylaws as amended in 2009, the LFPOA bylaws as amended in 2010, the LFPOA bylaws as amended in 2011, minutes from several LFPOA Board meetings, a 2010 letter from attorney Robert S. Edington opining that the LFPOA bylaws had been properly amended to allow the increase in dues, a copy of the “Board Member Code of Ethics” signed by Ponder on October 25, 2010, a copy of the Board’s confidentiality policy signed by Ponder on October 25, 2010, portions of Ponder’s deposition, e-mails sent by Ponder, printouts from a Web site built by Ponder soliciting participation in a class-action lawsuit against LFPOA, an e-mail from Ponder’s wife Kay Ponder inviting *345 LFPOA members to a meeting regarding the proposed class-action lawsuit, portions of Kay Ponder’s deposition, and a copy of Ponder’s deed to his property subject to the purview of LFPOA.
On September 28, 2013, Ponder filed a motion seeking a summary judgment as to both his claims and LFPOA’s counterclaims. Ponder supported his motion with a brief and exhibits including documents from the 2003 LFPOA annual meeting, the LFPOA bylaws as amended in 2006, 2009, and 2011, minutes from several LFPOA Board meetings, e-mails between Ponder and Board members, letters to Ponder from attorney Patrick Collins regarding the Board’s decision to remove him from the Board, a copy of the LFPOA articles of incorporation, and an affidavit from Ponder.
Each party filed a response to the opposing party’s motion for a summary judgment, which responses included voluminous additional exhibits and affidavits. Each party moved to strike various exhibits filed by the other, which resulted in numerous additional responses and replies, again with voluminous, and largely redundant, exhibits. On November 25, 2013, Ponder moved for certification of his class claims.
On February 13, 2014, the trial court entered a summary judgment in favor of LFPOA and against Ponder. The trial court further ruled that Ponder’s motions to strike and for class certification were moot based on the ruling in favor of LFPOA. The judgment found Ponder to be liable to LFPOA but did not address damages. On March 17, 2014, Ponder filed a motion to vacate the summary judgment on LFPOA’s counterclaims, which the trial court denied on May 27, 2014. On June 16, 2014, Ponder filed a motion in opposition to assessing damages. On June 17, 2014, the trial court held a hearing on damages. On June 18, 2014, the trial court entered an order assessing damages against Ponder in the amount of $36,061.25 in compensatory damages and $10,000 in punitive damages. Ponder did not file any postjudgment motions after the entry of the award of damages. Ponder filed his timely notice of appeal on June 23, 2014.
Ponder argues five issues on appeal: 1) whether the trial court erred in dismissing the LFPOA Board members in their individual capacities; 2) whether the trial court erred in entering a summary judgment in favor of LFPOA; 3) whether the trial court erred in calculating the award of damages; 4) whether the trial court erred by not entering a summary judgment in favor of Ponder on his claims;[1] and 5) whether the trial court erred by not ruling in Ponder’s favor on LFPOA’s counterclaims against him.
Ponder first argues that the trial court erred in dismissing the Board members in their individual capacities. Specifically, he argues that he “made allegations that the individual Board members conspired with themselves and others to perform, aid and abet the unlawful conduct alleged in the Complaint.” In his complaint, Ponder alleged that the individual Board members conspired to “carry out the wrongful conduct herein alleged and to conceal said conduct.” Ponder alleged that the Board members wrongfully concealed from LFPOA’s members unauthorized changes to the bylaws, that the Board members unlawfully raised membership dues, and that the Board members unlawfully removed him from the Board without the vote of the LFPOA membership. We review a trial court’s decision to *346 grant a motion to dismiss pursuant to Rule 12(b)(6), Ala. R. Civ. P., by asking
“whether, when the allegations of the complaint are viewed most strongly in the pleader’s favor, it appears that the pleader could prove any set of circumstances that would entitle [him] to relief. In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether [he] may possibly prevail. We note that a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.”
Nance v. Matthews, 622 So.2d 297, 299 (Ala.1993) (citations omitted). Based on the arguments presented by Ponder on appeal, the issue before us is whether his claim of civil conspiracy against the Board members rests on a legally actionable underlying unlawful act.
“A conspiracy cannot exist in the absence of an underlying tort. ‘[Liability for civil conspiracy rests upon the existence of an underlying wrong and if the underlying wrong provides no cause of action, then neither does the conspiracy.’ Jones v. BP Oil Co., 632 So.2d 435, 439 (Ala.1993). Because the record does not support [the plaintiffs] malicious prosecution claim or his abuse of process claim, his conspiracy claim is invalid.”
Willis v. Parker, 814 So.2d 857, 867 (Ala.2001). The parties do not address whether Ponder’s unjust-enrichment claim sounded in tort or contract. Our supreme court has declined to definitively answer whether an unjust-enrichment claim sounds in tort or contract. Snider v. Morgan, 113 So.3d 643, 655 (Ala.2012)(noting that it is unclear whether a statute of limitations applicable to contract claims or one applicable to tort claims would apply to an unjust-enrichment claim: “Our research similarly confirms that there is a distinct absence of authority definitively stating the statute of limitations applicable to an unjust-enrichment claim. We need not, however, decide that issue here.”). Some courts have treated unjust enrichment as a contractual claim stemming from a contract implied in fact or implied in law. See American Gen. Life & Accident Ins. Co. v. Underwood, 886 So.2d 807, 813 (Ala.2004)(finding that a claim of unjust enrichment based on money had and received was subject to the six-year statute of limitations applicable to actions sounding in contract: “On claims for unjust enrichment and money had and received, a plaintiff may commence a suit as soon as the defendant receives money and the circumstances imply the obligation to restore it.”). Others have treated unjust enrichment as a tort claim when arising from á tortious act. See Auburn Univ. v. International Bus. Machs. Corp., 716 F.Supp.2d 1114, 1118 (M.D.Ala.2010)(holding that plaintiffs claim of unjust enrichment was a tort claim arising from the defendant’s alleged conversion of intellectual property: “[I]t would be improper to classify all unjust-enrichment claims as either tort claims ... or implied-contract claims.... ”).
To the extent that Ponder’s claim of unjust enrichment may be considered a claim sounding in tort, because we hold in this opinion that the trial court’s summary judgment on the underlying issue of the Board’s raising the membership dues was not in error, we determine that Ponder could not recover for unjust enrichment sounding in tort. Therefore, to the extent that the trial court might have erred in dismissing Ponder’s conspiracy claim against the individual Board members on Ponder’s claim of unjust enrichment insofar as it sounded in tort, we hold that such error is harmless. See Rule 45, Ala. R.App. P.
*347 The remainder of Ponder’s claims alleging unlawful acts upon which Ponder based , his claim of civil conspiracy against the individual Board members involve alleged acts in violation of the contractual terms of the LFPOA bylaws, including his claim of unjust enrichment to the extent that it might sound in contract.
“ ‘It is well established that the constitution, bylaws, rules and regulations of a voluntary association constitute a contract between the association’s members, which is binding upon each member so long as the bylaws, etc., remain in effect. Medical Society of Mobile County v. Walker, 245 Ala. 135, 16 So.2d 321 (1944). Any dispute between a voluntary association and one of its members concerning the construction or validity of the association’s constitution, bylaws, rules and regulations constitutes a dispute as to the construction or validity of a written contract.’
“Wells v. Mobile County Bd. of Realtors, 387 So.2d 140, 142 (Ala.1980).”
Dawkins v. Walker, 794 So.2d 333, 339 (Ala.2001). When a plaintiff has based a claim of civil conspiracy on a breach of contract, our supreme court has held: “Because [the plaintiff] has failed to demonstrate that civil conspiracy can be based upon a breach of contract as the underlying wrong, we do not address that claim. To the extent the summary judgment disposed of that claim, we affirm it.” Hooper v. Columbus Reg’l Healthcare Sys., Inc., 956 So.2d 1135, 1142 (Ala.2006). See also Barber v. Stephenson, 260 Ala. 151, 155, 69 So.2d 251, 255 (1953)(“[I]t is generally held that an action for conspiring with another to induce the latter to break his contract cannot be maintained, the remedy being to sue on it. Erswell v. Ford, 208 Ala. 101, 94 So. 67 [ (1922) ]; Louisiana Oil Corp. v. Green, 230 Ala. 470, 161 So. 479 [ (1935) ].”). Therefore, we affirm the trial court’s dismissal of Ponder’s claim of civil conspiracy against the individual Board members.
Ponder next argues a series of issues regarding the trial court’s summary judgment in favor of LFPOA on each of its counterclaims. Because Ponder also argues that the trial court should have entered summary judgment in his favor as to each of LFPOA’s claims, we will discuss these arguments together.
“This Court’s review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); Ala. Code 1975, § 12-21-12. ‘[S]ubstantial evidence is evidence, of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assur. Co. of Fla., 547 So.2d 870, 871 (Ala.1989).”
*348 Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala.2004). We win address each claim in turn.
Ponder argues that the trial court erred in finding in favor of LFPOA on its counterclaim alleging spoliation of evidence.
“Spoliation is an attempt by a party to suppress or destroy material evidence favorable to the party’s adversary. May v. Moore, 424 So.2d 596, 603 (Ala. 1982). Proof of spoliation will support an inference of guilt or negligence. May, 424 So.2d at 603. One can prove spoliation by showing that a party purposefully or wrongfully destroyed a document that the party knew supported the interest of the party’s opponent. Id.”
Wal-Mart Stores, Inc. v. Goodman, 789 So.2d 166, 176 (Ala.2000). Ponder admitted that he used a personal computer to create a video presentation that was presented at the August 31, 2011, meeting and a Web site seeking participation from LFPOA members in a proposed class-action lawsuit against LFPOA and in a legal-defense fund. He used the same computer to send e-mails to the Board. Ponder admitted that he deleted files from the computer and sold the computer in a yard sale in 2012 without maintaining paper copies of all discoverable information pertinent to his claims and LFPOA’s counterclaims. Ponder claims, however, that he had no malicious intent in taking such action and that “he did not know there might have been any evidence that could be useful to LFPOA on its counterclaim.” In support of this argument, Ponder cites Walker v. City of Huntsville, 62 So.3d 474, 495 (Ala.2010), which provides:
“In Vesta [Fire Insurance Corp. v. Milam & Co. Construction Inc., 901 So.2d 84 (Ala.2004) ], this Court applied the standards [regarding a spoliation claim] and, as part of a detailed analysis, stated:
“ ‘The defendants do not argue that Vesta and Wausau acted with malicious intent in deciding what evidence to preserve, and the record, when viewed most favorably to Vesta and Wausau ... reflects at most honest error in judgment and/or simple negligence. There is no showing that they allowed evidence that they knew, or should have known, would be favorable to the opposing parties in foreseeable litigation to be discarded. Classic spoliation involves the idea that the offending party “purposefully and wrongfully” destroyed evidence “he knew was supportive of the interest of his opponent.” ’
“901 So.2d at 96 (quoting May [v. Moore], 424 So.2d [596,] 603 [(Ala.1982) ]). Nothing in this language suggests the availability of an inference contrary to the alleged spoliator on the issue of liability when the loss or destruction of the evidence is shown to be merely an act of negligence inconsistent with the standards of conduct expected of a reasonable person acting under similar circumstances.”
Ponder admits in his brief to this court that “[h]e did have information on his website about the class action,” but he claims that a law firm that he did not ultimately retain instructed him to delete the Web site. Nevertheless, Ponder claims that he had no way of knowing that the information on his computer, which he testified that he disposed of “[p]robably at a yard sale over the summer [of 2012],” would have information relevant to the lawsuit he filed on July 27, 2012. Ponder’s explanation of the circumstances surrounding the disposal of the computer presented a question of fact regarding his credibility, and “a court may not determine the credibility *349 of witnesses on a motion for summary-judgment.” McLeod v. McLeod, 78 So.3d 425, 427 (Ala.Civ.App.2011) (quoting Davis v. Sterne, Agee & Leach, Inc., 965 So.2d 1076, 1089 (Ala.2007), quoting in turn other cases) (internal quotation marks omitted).
As noted, the trial court granted LFPOA’s motion for a summary judgment and denied Ponder’s motion without limitation or specification. In its counterclaim, LFPOA sought damages against Ponder based on spoliation. In its motion for a summary judgment, LFPOA did not request any sanction or damages in regard to the spoliation claim. At the hearing regarding damages, counsel for LFPOA stated: “[W]e would have liked to have known whether [Ponder’s Web site and email activity were] done while he was a member of the Board, because he said it wasn’t while he was a member. So, that’s basically what our spoliation claim was about.” On appeal, LFPOA submits that summary judgment was properly entered based on its spoliation claim because, it argued, the evidence that was destroyed “would provide additional cause in support of [Ponder’s] removal [from the Board], as well as LFPOA’s breach of fiduciary duty claim,” and it “would be fundamentally unfair to require LFPOA and its Board of Directors to defend Ponder’s claims or establish their own claims where Ponder willfully destroyed relevant and material evidence regarding those claims.”
To the extent that LFPOA’s motion for a summary judgment was granted and Ponder’s motion was denied based in whole or in part on the spoliation claim, there remained a genuine issue of material fact preventing sueh action. Therefore, based on the manner in which the spoliation claim was presented to the trial court in the summary-judgment proceedings, we reverse the trial court’s judgment in favor of LFPOA on its spoliation claim, as well as on its breach-of-fiduciary-duty claims and we remand the case for further proceedings on those claims.
Ponder next argues that the trial court erred in entering a summary judgment on LFPOA’s claim that he interfered with a business relationship.
“In order to establish a prima facie case of intentional interference with a business or contractual relationship, there must be proof of each of the following:
“ ‘ “(1) The existence of a contract or business relation; (2) the defendant’s knowledge of the contract or business relation; (3) intentional interference by the defendant with the contract or business relation; and (4) damage to the plaintiff as a result of the defendant’s interference.” ’
“McCluney v. Zap Prof'l Photography, Inc., 663 So.2d 922, 925 (Aa.1995) (quoting Utah Foam Prods., Inc. v. Polytec, Inc., 584 So.2d 1345, 1352-53 (Aa. 1991)).”
S.B. v. Saint James Sch., 959 So.2d 72, 94 (Ala.2006). LFPOA argued in its brief in support of its motion for a summary judgment that LFPOA had a business relationship with its members, that Ponder was aware of that relationship, that Ponder intentionally interfered with that relationship by seeking participation in a class-action lawsuit and encouraging members to “opt-out” of membership in LFPOA and that LFPOA incurred damage in the form of lost time, legal fees, loss of goodwill, and decreased property values. However, it is undisputed that Ponder is a member of LFPOA and is therefore a party to the contractual relationship that exists between LFPOA’s members and LFPOA.
“ ‘After proving the existence of a contract, it is essential to a claim of tortious interference with contractual relations *350 that the plaintiff establish that the defendant is a “third party,” i.e., a “stranger” to the contract with which the defendant allegedly interfered.’ Atlanta Market Ctr. Management Co. v. McLane, 269 Ga. 604, 608, 503 S.E.2d 278, 282 (1998); see also Alcazar Amusement Co. v. Mudd & Colley Amusement Co., 204 Ala. 509, 86 So. 209 (1920). This is so, because ‘a party to a contract cannot, as a matter of law, be liable for tortious interference with the contract.’ Lolley v. Howell, 504 So.2d 253, 255 (Ala.1987).”
BellSouth Mobility, Inc. v. Cellulink, Inc., 814 So.2d 203, 212 (Ala.2001). LFPOA failed to establish that Ponder was a stranger to the contractual relationship with which he allegedly interfered; therefore, Ponder cannot be liable for interference with that relationship. Therefore, we reverse the trial court’s judgment insofar as it found in favor of LFPOA on its claim of tortious interference with a business relationship, and we remand the case for the entry of judgment on this claim in favor of Ponder.
Ponder next argues that the trial court erred by entering a summary judgment in favor of LFPOA on its claim of defamation per se.
“ ‘To establish a prima facie case of defamation, a plaintiff must show:
“ ‘ “[1] that the defendant was at least negligent [2] in publishing [3] a false and defamatory statement to another [4] concerning the plaintiff, [5] which is either actionable without having to prove special harm (actionable per se) or actionable upon allegations and proof of special harm (actionable per quod).” ’
“Ex parte Crawford Broad. Co., 904 So.2d 221, 225 (Ala.2004) (quoting Delta Health Group, Inc. v. Stafford, 887 So.2d 887, 895 (Ala.2004), quoting in turn Nelson v. Lapeyrouse Grain Corp., 534 So.2d 1085, 1091 (Ala.1988) (emphasis added)).”
Federal Credit, Inc. v. Fuller, 72 So.3d 5, 9-10 (Ala.2011). Our supreme court has stated:
“Ceravolo v. Brown, 364 So.2d 1155 (Ala.1978), decided significantly after the authorities cited in Gamble’s Alabama Law of Damages § 36-27 n. 4 [ (4th ed.1999) ], restated the test for determining whether an allegedly defamatory statement constitutes slander per se:
“ ‘ “The foundation of an action for libel or slander is a malicious injury to reputation, and any false and malicious imputation of crime or moral delinquency by one published of and concerning another, which subjects the person to disgrace, ridicule, odium, or contempt in the estimation of his friends and acquaintances, or the public, with resulting damage to his reputation, is actionable either per se or per quod....
“ ‘ “There is a distinction between actions of libel predicated on written or printed malicious aspersions of character, and actions of slander resting on oral defamation .... This distinction, however, is merely in respect to the question as to whether the imputed language or words are actionable per se.
“ ‘ “In cases of libel, if the language used exposes the plaintiff to public ridicule or contempt, though it does not embody an accusation of crime, the law presumes damage to the reputation, and pronounces it actionable per se. While to constitute slander actionable .per se, there must be an imputation of an indictable offense involving infamy or moral turpitude....
"'"...."'
*351 “364 So.2d at 1156-57, quoting Marion v. Davis, 217 Ala. 16, 18, 114 So. 357, 358-59 (1927) (emphasis added).
"....
“When determining whether a statement is actionable as slander per se, a court must give the language used ‘that meaning that would be ascribed to the language by a reader or listener of “average or ordinary intelligence, or by a common mind.”’ Camp v. Yeager, 601 So.2d 924, 927 (Ala.1992), quoting Loveless v. Graddick, 295 Ala. 142, 148, 325 So.2d 137, 142 (1975). Moreover, this Court has stated: ‘ “WTien words from their general import appear to have been spoken with a view to defame a party, the court ought not to be industrious in putting a construction upon them different from what they bear in the common acceptation and meaning of them.’” Johnson v. Turner, 159 Ala. 356, 358, 47 So. 570, 571 (1908), quoting Wofford v. Meeks, 129 Ala. 349, 357, 30 So. 625, 627 (1901). Stated differently, the courts will not apply a forced construction in order to render the statement nondefamatory and thereby to relieve the defendant of liability. Marion v. Davis, 217 Ala. at 19, 114 So. at 359. Finally, the alleged slanderous statement must be construed in connection with the other parts of the conversation, in order to determine the context in which the statement was made. Marion, supra.”
Liberty Nat’l Life Ins. Co. v. Daugherty, 840 So.2d 152, 157-58 (Ala.2002).
It is undisputed that Ponder controlled and maintained a publically available Web site that alleged that “[ejvidence of voter fraud, along with illegally collected dues, charges, late fees & assessments have been revealed and serve as the basis of our complaints against the Lake Forest Property Owners Association (LFPOA) and its Board of Directors.” On the Web site, Ponder further stated that “I, along with dozens of LFPOA members, have uncovered conclusive evidence of monetary fraud and voter fraud by past and current members of the Board of Directors.” Relying on his deposition testimony, Ponder argues that he did not intend for his statements on the Web site to indicate that, he was accusing LFPOA of the criminal acts of voter fraud, monetary fraud, and conspiracy to defraud. However, in making this argument, Ponder effectively admits that those statements, given their ordinary and commonly understood meaning, are not true and. therefore cannot serve as the basis for a defense of truth of the matters asserted. Moreover, Ponder admitted in his deposition testimony, that the plain meaning of the statement on the Web site “implies some type of illegal or criminal act.” The undisputed evidence before the trial court was that Ponder knowingly published false and defamatory statements about LFPOA and its Board that imputed criminal acts to LFPOA and its Board; therefore, those statements were actionable per se. Whether Ponder meant something less than “criminal acts” by his statements is not dispositive in light of the commonly understood meaning of the words used.
Ponder further argues that punitive damages were not recoverable pursuant to § 6-11-20, Ala.Code 1975, in regard to the claim of defamation per se. “To recover punitive damages in defamation cases, a plaintiff must show that the declarant communicated the defamatory statement with malice.” Nelson v. Lapeyrouse Grain Corp., 534 So.2d 1085, 1095 (Ala.1988). “Where the publication is libelous per se, the law presumes it to be false and, therefore, prompted by malice.” McGraw v. Thomason, 265 Ala. 635, 637, 93 So.2d 741, 742 (1957). Therefore, the *352 trial court did not err in finding, pursuant to § 6-ll-20(b)(2)b., malice “[u]nder such circumstances that the law will imply an evil intent.”
Ponder also argues that LFPOA failed to show damages for its tort claims. As to LFPOA’s defamation per se claim, the law is well settled:
“However, ‘[d]amage is implied by law when spoken words are found to be slander per se.’ Anderton v. Gentry, 577 So.2d 1261, 1263 (Ala.1991), see also Sunshine Invs., Inc. v. Brooks, 642 So.2d 408, 410 (Ala.1994). Words found to be slander per se ‘relieve the plaintiff of the requirement of proving “actual harm to reputation or any other damage” in order to recover nominal or compensatory damages.’ Nelson v. Lapeyrouse Grain Corp., 534 So.2d 1085, 1092 (Ala.1988), quoting W. Prosser and W. Keeton, The Law of Torts § 112, at 788 (5th ed.1984).”
Liberty Nat’l Life Ins. Co. v. Daugherty, 840 So.2d at 157. Additionally, LFPOA presented evidence indicating that it incurred legal expenses and increased insurance premiums as a direct result of Ponder’s acts, which LFPOA demonstrated by showing that Ponder led a campaign to encourage individual dues-paying members of LFPOA to remove their properties from the purview of LFPOA and to bring a lawsuit against LFPOA.
Ponder also argues that the trial court erred in calculating the award of damages. Because the trial court did not apportion its damages award, identifying which aspects of its award were attributable to LFPOA’s claim alleging tortious interference with a business relationship, spoliation of evidence, breach of fiduciary duty, and defamation per se, we reverse the damages award in its entirety.
Ponder’s fourth series of arguments are that the trial court should have entered a summary judgment in favor of Ponder on his claims. This issue is reviewable because the trial court granted the motion for a summary judgment filed by LFPOA.
“Ordinarily, a party may not appeal from the denial of a summary-judgment motion. Parsons Steel, Inc. v. Beasley, 522 So.2d 253, 258 (Ala.1988) (‘An order denying summary judgment is interlocutory and nonappealable.’). Where cross-motions for a summary judgment are filed in the trial court, the party whose motion was not granted is entitled to have that motion reviewed on an appeal from the grant of the opponent’s motion.”
Mountain Lakes Dist., N. Alabama Annual Conference, United Methodist Church, Inc. v. Oak Grove Methodist Church, 126 So.3d 172, 180 (Ala.Civ.App.2013); see also Hanner v. Metro Bank & Protective Life Ins. Co., 952 So.2d 1056, 1071 n. 4 (Ala. 2006).
Ponder argues that, after the Board voted on the motion in November 2003 to delete the newly added language in the bylaws that said the bylaws could be amended by a “vote of a majority of the Board ... at any meeting thereof,” the Board lacked the authority to rescind its decision on that motion on April 28, 2008. It is undisputed that the LFPOA bylaws state that all “stated meetings of the Board ... shall be conducted in accordance with the procedures set out in the current edition of ‘Robert’s Rules of Order,’ except where such rules are superseded by the Articles of Incorporation, the By-Laws or Federal or State law.” Moreover, it is undisputed that Article IX, § 35, of Robert’s Rules of Order (10th ed.) allows for the rescinding of a prior action and provides that the effect of granting a mo *353 tion to rescind “is to-strike out an entire main motion, resolution, rule, bylaw, section, or paragraph that has been adopted at some previous time.” On April 28, 2008, the Board passed a motion rescinding its action of November 2003 that had deleted the amended language in the bylaws. Ponder cites to general authority for the proposition that one cannot do indirectly what one cannot do directly. However, Ponder cites no authority for the proposition that a private corporation, governed by a set of bylaws and Robert’s Rules of Order, may not employ a provision of Robert’s Rules of Order to rescind an action that had previously been made pursuant to those same Rules. “Rule 28(a)(10)[, Ala.R.App. P.,] requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party’s position. If -they do not, the arguments are waived.” White Sands Grp., L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala.2008).
Ponder further argues that, even if the Board had the authority to amend the bylaws after April 28, 2008, the Board “did not amend Section 2.4 at the meeting on September 29,2009.” Specifically, Ponder argues that the minutes from the September 29, 2009, meeting indicate that the Board voted in favor of “a motion to change By-Law 2.4 to its original form.” The record does not contain an “original” copy of the bylaws. The oldest version of the bylaws in the record notes that it is the version “AS AMENDED OCTOBER 10, 1988,” and provides:
“Section 2.4. Dues, Charges and Assessments. Members of the Association shall be obligated to pay dues, charges and assessments imposed by the Association.
“Annual increases in dues must be approved by the members of the Association at the annual meeting. The Board of Directors has no authority to increase dues.. The power of authority of the Board of Directors is limited to one (1) assessment annually, if deemed necessary, for the preservation of the Association. This asséssment cannot exceed $50.00 per member annually.”
On October 4, 2009, the Board held a special meeting to discuss changing the amount of membership dues. At that meeting, the Board passed a motion to increase the LFPOA monthly dues by $6.00 per month effective January 2010. The Board met for another special meeting on October 10, 2009, at which the Board ratified its decision to increase the membership dues made at the October 4, 2009, Board meeting. The record further indicates that Section 2.4 of the LFPOA bylaws as amended on October 10', 2009, provided:
“Section 2.4. Dues, Charges and Assessments. Members of the Association shall be obligated to pay dues, charges and assessments imposed by the Association. Note: Pursuant to a motion made in a special meeting on October 4th, 2009 a maximum cap of 3% can be issued by the Board of Directors as determined at the Annual Meeting.”
Ponder argues that the 1988 version of Section 2.4 is the “original.” However, he offered no evidence indicating that Section 2.4, as it was amended in 1988, was in fact original. Moreover, he offered no evidence to contradict that the October 10, 2009, version of Section 2.4 did not contain the original language that the Board voted to readopt on September 29, 2009, which decision was then ratified on October 10, 2009. Again, Ponder cites no authority in support of this portion of his argument. After LFPOA made a prima facie showing that there is no genuine issue of material fact as to whether it had amended the bylaws to allow the Board to make in *354 creases to membership dues, the burden then shifted to Ponder to produce substantial evidence as to the existence of a genuine issue of material fact. “[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.” Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2506, 91 L.Ed.2d 202 (1986). Even viewing the evidence in the light most favorable to Ponder, he has not produced substantial evidence indicating that Section 2.4 of the bylaws, as amended in 2009, does not reflect its original form. Rather, at best, Ponder has demonstrated that it does not reflect the bylaws as amended in 1988. Having failed to produce substantial evidence to overcome LFPOA’s prima facie showing that there is no genuine issue of material fact as to its amendment of Section 2.4 of the bylaws, the trial court did not err in entering summary judgment in favor of LFPOA on both parties’ claims for a declaratory judgment regarding this issue.
Ponder next argues that the Board “did not have the authority to remove Ponder from the Board” pursuant to bylaws. Article V of the bylaws provides the rules for the “Board of Directors” of LFPOA. Section 5.8 of the bylaws provides the mechanism for removal of a director, i.e., a member of the Board:
“Removal of Directors. A director of the Corporation shall not be removed from office except for cause. In order to remove a director from office for cause, such action must be taken by a majority vote at either the annual meeting of the membership or at a special meeting called for that purpose.”
Section 5.6 of the bylaws defines the term “Special Meeting” as follows:
“Special Meetings. Special meetings of the Board of Directors shall be held whenever called by the President, Vice President or by any two of the directors. Notice of such meeting shall be emailed to each director at the director’s last known email address, not later than three days before the day on which the meeting is to be held, or by telephone, not later than the day before the day on which the meeting is to be held. Notice of any meeting of the Board need not be given, however, to any director, if waived by him in writing; and any meeting of the Board of Directors shall be a legal meeting without any notice thereof having been given, if all members shall be present thereat. Any director may waive notice of any meeting of the Board of Directors before or after such meeting. Except as otherwise provided in the By-laws or as may be indicated in the notice thereof, any and all business may be transacted at any special meei> ing of the Board of Directors.
“In any emergency situation where a decision of the Board is necessary, Board members may be reached by telephone, email, or by any other expedient means and, having reached a quorum, Board members may transact business and make necessary decisions by conference call, email, or by other means necessary. Normal notice requirements may be waived by the members of the Board in this event. However, decisions made in emergency situations shall be addressed and ratified at the next slated Board meeting in the usual order of business with proper notations in the minutes of said meeting to preserve the records and minutes of the Board.”
There is no provision within Section 5.6 for a “special meeting” of LFPOA’s entire membership. However, Section 3.2 defines a “special meeting” as follows:
*355 “Section 3.2. Special Meetings. A special meeting of the members of the Corporation may be called at any time by the Board of Directors, the President, Vice President or by persons holding at least twenty-five percent (25%) of the votes eligible to be cast in any such meeting, except as otherwise provided by statute or in the Articles of Incorporation or any amendment thereto.”
When a term used in a contract is susceptible to more than one reasonable interpretation, that term is ambiguous, and the trial court is precluded from entering summary judgment on issues the resolution of which are dependent upon an interpretation of that term. Whitetail Dev. Corp. v. Nickelson, 689 So.2d 865, 867 (Ala.Civ.App.1996)(“The term ‘closing,’ as used in this contract, is susceptible to more than one reasonable interpretation and is, therefore, ambiguous. Accordingly, the trial court was precluded from entering a summary judgment.”). Because the bylaws have two different definitions of “special meeting,” the type of “special meeting” envisioned by Section 5.8 is ambiguous and creates a genuine issue of material fact as to whether the “special meeting” referred to in Section 5.8 is a meeting of the Board or a meeting of LFPOA’s entire membership. Therefore, we reverse the judgment in favor of LFPOA on the parties’ respective claims for a declaratory judgment regarding the Board’s authority to remove Ponder as a director at a special meeting of the Board, and we remand the case for further proceedings on this issue.
Ponder’s argument that the trial court erred in denying his motion for a summary judgment on his claim of unjust enrichment is moot in light of our holding that the Board did not “unlawfully” raise membership dues. For the foregoing reasons, we affirm the summary judgment entered in favor of LFPOA on the parties’ claims for a declaratory judgment as to whether the Board could amend the bylaws and increase dues, on LFPOA’s claim asserting liability for defamation per se, and on Ponder’s claims of unjust enrichment and civil conspiracy, and we affirm the dismissal of the individual Board members. We reverse the trial court’s summary judgment in favor of LFPOA as to the claims for a declaratory judgment regarding the Board’s authority to remove Ponder as a director, as to LFPOA’s claim of tortious interference with a business relationship, as to LFPOA’s claim alleging spoliation of evidence, and as to LFPOA’s claim alleging breach of fiduciary duty. Further, because the damages award is not apportioned among the claims that are still viable and the claims that are not viable, we reverse the award of damages. We remand the case for the trial court to enter a summary judgment in favor of Ponder on LFPOA’s intentional-interference claim, to enter a damages award on LFPOA’s defamation claim, and to conduct further proceedings on LFPOA’s spoliation and breach-of-fiduciary-duty claims and on LFPOA’s and Ponder’s declaratory-judgment claims as to Ponder’s removal from the Board.
Ponder’s request for the award of attorney fees on appeal is denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
PITTMAN, J., concurs.
THOMPSON, P.J., and THOMAS and MOORE, JJ., concur in the result, without writing.

. Ponder offers no argument or citation to authority regarding his claim in his complaint seeking class certification, and that argument is therefore waived.